**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph FEEKES, Defendant–Appellant.**

No. 89–3217.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1990.
Decided April 8, 1991.

John W. Vaudreuil, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Donald J. Murphy, Madison, Wis., for defendant-appellant.

Before WOOD, Jr., COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

Defendant Joseph Feekes appeals from a sentence he received under the Sentencing Guidelines following his conviction for using a communication facility to distribute heroin in violation of 21 U.S.C. § 843(b). At sentencing, the district court departed upward from the recommended offense level for the "use of telephone" conviction because of the amount of drugs involved and the fact that the offense took place inside a federal prison. Feekes challenges this upward departure as well as several other adjustments made by the district court. We affirm.

## I. BACKGROUND

Feekes and three other co-defendants, Larry Clark, Baltazar Lopez, and Michael Guzman, were inmates at the Federal Correctional Institution at Oxford, Wisconsin. Another co-defendant, Juan Lopez, Baltazar's son, lived in Chicago. In the fall of 1987, Feekes approached another inmate, Bob Rantz, to assist him in bringing heroin into the prison through a visiting room. Rantz in turn contacted the prison authorities about the heroin request and agreed to cooperate. He later told Feekes that his girlfriend, Billie Garrett, would assist in obtaining the heroin and bringing it into the prison.

On October 30, Guzman telephoned a person called "Al" in Chicago and said that Garrett would call him when she arrived there. The next day, Feekes gave "Al's" phone number to Rantz for him to pass on to Garrett. At Feekes' suggestion, Clark arranged to have an $800 money order in Garrett's name wired to a Madison, Wisconsin Western Union office. Feekes also arranged for Marsha Rusecki, an outside friend, to relay messages between Feekes and Garrett as the deal progressed. The connection with "Al" proved unsuccessful.

Feekes then found a new source for the heroin in Baltazar Lopez's son Juan in Chicago. On November 3, Garrett picked up the money order at Western Union and left for Chicago. Feekes had given her directions to a meeting at a McDonalds restaurant in Chicago near Juan Lopez's home. On November 5, Baltazar Lopez called Juan and confirmed that Garrett was coming to Chicago to pick up half a "beer." Later that day, Federal Bureau of Investigation Special Agent Mary Rook, posing as Garrett, met with Juan Lopez at the McDonalds. Lopez handed her a plastic bag containing 22.21 grams of heroin in exchange for $500. He was then arrested.

On February 17, 1988, a grand jury returned a thirteen count indictment against Feekes, Clark, Guzman, Baltazar Lopez, and Juan Lopez. Count 1 charged all five with conspiring to smuggle 22.21 grams of heroin into the prison in violation of 21 U.S.C. § 841(a)(1). Counts 5, 8, 9, 10 and 12 charged Feekes with using a communication facility in committing a drug offense in violation of section 843(b). The other counts charged Baltazar Lopez with using a telephone to facilitate the distribution of heroin.

A jury found Feekes guilty on the "use of telephone" counts but acquitted him on the conspiracy count. Judge Shabaz, believing the federal sentencing guidelines to

be unconstitutional, sentenced Feekes to a twenty year term of imprisonment consecutive to the term he was already serving. On appeal, this court affirmed the conviction, but remanded for resentencing under the Sentencing Guidelines. *United States v. Feekes*, 879 F.2d 1562, 1568 (7th Cir. 1989) (citing *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)).

In determining Feekes' new sentence on remand, the district court found that the base offense level for the use of a communication facility in committing a drug offense is twelve. *See* U.S.S.G. § 2D1.6. The district court determined that this sentence would not adequately reflect the seriousness of Feekes' attempt to introduce 22.21 grams of heroin into a federal prison and departed upward from the suggested offense level. Regarding the extent of the departure, the court noted that the offense level for heroin in excess of twenty-two grams is eighteen under the drug quantity table in U.S.S.G. § 2D1.1(c). The court therefore increased the offense level by six to a level of eighteen. The court then adjusted the offense level upward by three due to Feekes' aggravating role as a manager and supervisor pursuant to U.S.S.G. § 3B1.1(b) and by two for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The court also declined a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because Feekes had obstructed justice. When the court added the final offense level of twenty-three to a criminal history category of VI, the Guidelines suggested a sentencing range of between 92 and 115 months. The court sentenced Feekes to a 115 month term to run consecutively to his current sentence of thirty-five years.

## II. ANALYSIS

### A. *Upward Departure*

■ This court examines a district court's departure from the Sentencing Guidelines "to determine whether [the departure] was reasonable in light of the district court's explanations for its departure at the time of sentencing." 18 U.S.C.

§§ 3553(c) and 3742(e)(3); *United States v. Williams*, 910 F.2d 1574, 1577 (7th Cir. 1990); *United States v. Gaddy*, 909 F.2d 196, 198–99 (7th Cir.1990). The court reviews the grounds stated for departure under the *de novo* standard, but accepts factual findings supporting the departure unless clearly erroneous. If necessary, the court determines whether the amount of departure was reasonable. *Williams*, 910 F.2d at 1578.

The Sentencing Guidelines allow departure if either the criminal history or the charge understates the seriousness of the crime for reasons the Sentencing Commission has not adequately considered. 18 U.S.C. § 3353(b). The purpose of this limitation is to ensure uniformity in sentences by narrowing the disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders. *See* U.S.S.G. Ch. 1, Pt. A, 3 intro. comment. Departures are authorized because no set of rules, however comprehensive, can capture all features that may turn out to be important. *United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990). The Commission has also cautioned that its failure to include a sentencing factor in a guideline for one offense, while including it in the guidelines for others, does not indicate that that factor may not be ground for departure from the former. *See* U.S.S.G. § 5K2.0.

■ Feekes argues that the Sentencing Commission must have considered and rejected the option of correlating the penalty for Feekes' offense to the quantity of drugs involved when it established a separate base level offense for Guideline § 2D1.6. Therefore he contends that the district court erred in basing its departure on the amount of drugs involved in the transaction.

■ At the time of Feekes' conviction, the offense level for "use of telephone" was not tied to the drug quantity table in Guidelines § 2D1.1. U.S.S.G. § 2D1.6; *see also* U.S.S.G. § 2D1.7 (transporting drug paraphernalia); U.S.S.G. § 2D1.8 (renting or managing a drug establishment); U.S.

S.G. § 2D1.9 (placing or maintaining dangerous devices on federal property to protect the unlawful production of controlled substances); U.S.S.G. § 2D2.1 (unlawful possession); U.S.S.G. § 2D2.2 (acquiring a controlled substance by forgery, fraud, deception or subterfuge); and U.S.S.G. § 2D2.3 (operating or directing the operation of a common carrier under the influence of alcohol or drugs). Departure under Guideline § 2D1.6 based on amount is authorized but only to the extent that the amount grossly exceeds the amount established for the base offense level so as not to undermine the consistency of the Guidelines. *See United States v. Bennett*, 900 F.2d 204, 206 (9th Cir.1990) (affirming departure for 3 kilograms of cocaine); *United States v. Williams*, 895 F.2d 435, 438 (8th Cir.1990) (affirming departure for between 8 and 10 pounds of amphetamines); *United States v. Correa–Vargas*, 860 F.2d 35, 38 (2nd Cir.1988) (affirming departure for 20 kilograms of 87% pure cocaine); *see also United States v. Davis*, 912 F.2d 1210, 1212 (10th Cir.1990) (affirming departure under U.S.S.G. § 2D1.8 for managing a drug establishment based on three or four kilograms of cocaine); and *United States v. Crawford*, 883 F.2d 963, 965–66 (11th Cir.1989) (affirming departure for simple possession under U.S.S.G. § 2D2.1(a)(2) for 622 grams of cocaine). By limiting departures to cases with large quantities, courts have avoided the potential of producing a quantity-calibrated offense level scale where the Commission had chosen not to establish one. *Bennett*, 900 F.2d at 206. Therefore it is only when the large quantity threshold has been crossed that a district court's departure is permissible. *Id.*

In this case Feekes used the telephone to attempt to smuggle 22.21 grams of heroin into the prison. The distribution of heroin in a prison setting is very dangerous. *Block v. Rutherford*, 468 U.S. 576, 588, 104 S.Ct. 3227, 3233, 82 L.Ed.2d 438 (1984) ("We can take judicial notice that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country."); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir.1986) (same). The use by inmates of illicit drugs presents a serious threat to the safety and security of a correctional facility.

At trial the testimony showed that the street value of this amount of heroin was approximately $800. While this amount of drugs is not as large as the amounts found to warrant departure in other cases, this heroin was to be distributed in a federal prison and not on the street. It is not beyond the realm of probability to assume that inmates with a limited supply would have cut the heroin into extremely small quantities before selling it to many others in the prison population. As a result this comparatively small amount when distributed in prison would have had an effect similar to the larger quantities found to warrant departure when distributed on the street. Because the heroin was being distributed in a prison setting, this quantity is sufficiently large to cross the threshold warranting departure.

■ Feekes also argues that the departure was not warranted based on the amount of drugs because the jury acquitted him of conspiracy. The fact that the jury acquitted Feekes of conspiracy does not mean that he did not use the telephone to try to traffic heroin into prison. The jury heard the tapes of his conversations with Garrett, Lopez and Rusecki, and convicted him. The use of this amount of heroin in deciding to depart was proper.

■ Finally the extent of departure was reasonable. The district court looked to the drug quantity table in Guideline § 2D1.1 when calculating the extent of the departure. This court has approved looking to an analogous sentencing provision in measuring the extent of departure. *See Ferra*, 900 F.2d at 1062. The extent of departure is also identical to the base offense level now set for use of telephone offenses under amended Guideline § 2D1.6 effective November 1, 1990. Although this amendment post-dates Feekes' conviction and is thus inapplicable, it is instructive regarding the current thinking of the Sentencing Commission. The Commission amended Guideline § 2D1.6 to provide that the base offense level is "the offense level

applicable to the underlying offense." Based on this amendment, a sentencing judge would look to the drug quantity table in Guideline § 2D1.1 when a use of telephone case involved drugs. The Commission designed the amendment to reduce unwarranted disparities by requiring consideration in the guideline of the amount of the controlled substance involved in the offense. U.S.S.G.App. C, n. 320. The Commission also noted that departures were frequently warranted because the scale of the underlying drug offense was not reflected in the guideline. *Id.* This amendment shows that the sentencing judge was on the same wave-length as the Sentencing Commission when it used the drug quantity table to determine the extent of the departure.

We hold that the district court properly imposed an upward departure from the base offense level for a "use of telephone" conviction where a prisoner attempted to smuggle 22.21 grams of heroin into a federal prison. Further we are of the opinion that the extent of departure was reasonable because the district court tied the departure to the drug quantity table.

### B. *Aggravating Role in the Offense*

■ U.S.S.G. § 3B1.1 permits the district court to adjust upward a defendant's offense level if the defendant played an aggravating role in the offense. *United States v. Brown*, 900 F.2d 1098, 1101 (7th Cir.1990). A sentencing court's determination concerning a defendant's role in the offense is a finding of fact, subject to a clearly erroneous standard of review on appeal. *Id.; United States v. Herrera*, 878 F.2d 997, 999–1000 (7th Cir.1989). A finding of fact is clearly erroneous only if, after reviewing all the evidence, the appellate court is left " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ The district court found that the criminal activity in this case involved five criminally responsible participants including three inmates and two outside assistants as required for an increase of three levels under U.S.S.G. § 3B1.1(b). The evidence showed that Feekes directed Clark to obtain an $800 money order to purchase the heroin. He asked Guzman to purchase the heroin, and when Guzman failed, he engaged the services of Baltazar and Juan Lopez. Feekes also used Rusecki to relay messages to Garrett. Based on all this evidence, the district court was not clearly erroneous in determining that Feekes was a manager and supervisor, and properly assessed the three level increase.

### C. *Obstruction of Justice*

■ The district court action in imposing a two level increase for obstruction of justice under U.S.S.G. § 3C1.1 was proper. The sentencing court's determination that a defendant obstructed justice is a finding of fact. This court reviews that decision under a clearly erroneous standard. *Brown*, 900 F.2d at 1103 (citing *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir. 1989)). The district court imposed an upward adjustment of two levels because of Feekes' false testimony at trial regarding the extent of his contact with Juan Lopez in the fall of 1987. Feekes testified that he lost all contact with Juan Lopez by mid-October. In fact, a tape recording from November 3, 1987 showed that Feekes gave Garrett directions of where she was to meet with Juan Lopez to purchase the heroin. Feekes also provided Garrett with Juan Lopez' address. Based on this evidence, the district court concluded that Feekes had committed perjury and assessed an additional two level adjustment for obstruction of justice. This finding by the district court was not clearly erroneous and, due to its finding, the district court acted within its discretion in refusing a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Application Note 4, U.S.S.G. § 3E1.1; *see also United States v. Dillon*, 905 F.2d 1034, 1039 n. 1 (7th Cir.1990); *United States v. McNeal*, 900 F.2d 119, 122 (7th Cir.1990).

## CONCLUSION

For these reasons, the sentence imposed by the district court under the Sentencing Guidelines is

AFFIRMED.