**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles EMENOGHA, Gibson Nwafor,**
**and Vincent Nwafor, Defendants–**
**Appellants.**

Nos. 91–2577, 91–2832, 91–2833.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1992.

Decided July 12, 1993.

Barry R. Elden, James P. Fleissner, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, IL, Scott A. Verseman (argued), Office of the U.S. Atty., Rockford, IL, for U.S.

David W. Gleicher (argued), Chicago, IL, for Charles Emenogha.

Carlton E. Odim (argued), Chicago, IL, for Gibson Nwafor.

Roberta Samotny, Anita Rivkin–Carothers (argued), Chicago, IL, for Vincent Nwafor.

Before CUDAHY, RIPPLE, and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

On March 26, 1991, the appellants [1] were convicted of various drug offenses. Charles Emenogha was found guilty of one count of importing heroin and one count of possessing heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 952(a); Vincent Nwafor was found guilty of one count of

---

1. At the time of trial defendant Ebenezer Dikeocha was a fugitive and does not join in this appeal.

possessing heroin with intent to distribute and five counts of distributing heroin in violation of 21 U.S.C. § 841(a)(1); and Gibson Nwafor was found guilty of ten counts of structuring financial transactions to avoid Internal Revenue reporting requirements in violation of 31 U.S.C. §§ 5324 and 5322(a). All defendants were also convicted of conspiracy to import and distribute heroin in violation of 21 U.S.C. § 846. Mr. Emenogha was sentenced to 132 months' incarceration, Gibson Nwafor to 160 months, and Vincent Nwafor to 396 months. They now appeal various aspects of their convictions and sentences. We affirm.

## I

## BACKGROUND

This trio of Nigerian citizens was convicted of conspiring to import heroin from Africa for distribution in Chicago. They joined forces to smuggle the drug into this country by financing couriers to purchase heroin in Lagos, Nigeria, and to convey it to Chicago where the other conspiracy members would divide it for distribution. Vincent Nwafor, the prime mover in the enterprise, organized the purchases and the subsequent distributions. Gibson Nwafor, Vincent's brother, handled the financial arrangements. Gibson Nwafor held the profits at his own apartment, converted the proceeds to larger bills for easier handling at various Chicago banks, and wire-transferred money out of the country on Vincent Nwafor's behalf. Mr. Emenogha, who is the Nwafors' cousin, acted as a courier and brought heroin to Chicago from Nigeria on at least three occasions.

The operation was assisted by Ebenezer Dikeocha, who smuggled heroin into the United States and distributed it at least once in conjunction with Vincent Nwafor. Additional distributors were Andy Uwazoke and Ike Agu. Larry Palmer, a/k/a Lawrence Ofuokwu (hereinafter "Palmer"), an uncharged member of the conspiracy, travelled to Nigeria to purchase heroin; he pled guilty to a drug charge in Maryland and agreed to cooperate with the United States in investigating other members of the conspiracy. Other couriers for the conspiracy were Tracy

Ousley, Beverly (last name not known), and Darlene Sumpter, Vincent Nwafor's girlfriend, who contacted the Drug Enforcement Administration (DEA) in 1989 and agreed to cooperate in arranging an undercover purchase of heroin between Vincent Nwafor and Chicago police officer Regina Joanes.

Palmer testified at length about the structure and activities of the conspiracy. He was privy to, and a major player in, a number of smuggling operations, including a December 1988 episode when he was involved with Vincent Nwafor and Dikeocha in importing 500 grams of heroin from Nigeria. In July 1989, Palmer met with Vincent Nwafor, Dikeocha, and Uwazoke to discuss a plan to use Tracy Ousley and Beverly to smuggle heroin from Kenya, a plan that produced 1.7 kilograms of the drug. Another plan was made that summer for Palmer to purchase drugs in Nigeria and for Tracy Ousley to bring them to the United States. Palmer made the purchase in Nigeria in October and returned to the United States, but a courier was not sent to Nigeria to pick up the drugs.

After Palmer was arrested in November 1989, he telephoned Vincent Nwafor and learned that Mr. Emenogha had returned from Nigeria with some of the drugs that Palmer had left behind. When Palmer asked about his share of the profits from these drugs, Vincent Nwafor told him that he was entitled to none because Palmer's brother in Nigeria would not relinquish a portion of the drugs that Palmer had left in his care.

The DEA arranged a number of undercover purchases with the aid of the Chicago police and Darlene Sumpter. Between January 27, 1989, and September 10, 1990, five purchases were made from Vincent Nwafor and one from Dikeocha. The purchases from Vincent Nwafor totalled over 200 grams of heroin. During the course of several of the purchases, Vincent Nwafor talked to Officer Joanes about her acting as courier and suggested that she travel to Africa via Jamaica or the Bahamas and return with the drugs in a specially built suitcase.

Gibson Nwafor's role in the conspiracy was to handle the profits efficiently. He stored the cash at his apartment, exchanged small bills for $100 bills for easy transport, and

wire-transferred thousands of dollars out of the country to banks in Belgium and Germany. From February 23, 1989, to August 3, 1990, he wire-transferred $142,619 in twenty-three separate transactions. Between July 5, 1990, and September 10, 1990, he exchanged a total of $139,400 for larger bills on ten different occasions. Palmer testified that he was with Gibson Nwafor when he processed large sums of drug money through various banks in such a way that he could avoid IRS reporting requirements.

Darlene Sumpter was arrested at O'Hare Airport on March 31, 1990, prior to boarding an international flight with $103,940 in $100 bills. The money was in several envelopes, some of them marked with the names Ike, MacDonald (a/k/a Emenogha), and Vin. In subsequent telephone calls, Vincent Nwafor told her that the money had been put into her luggage by other members of the conspiracy. On July 25, 1990, Mr. Emenogha was arrested on arrival at O'Hare Airport with 997 grams of heroin secreted in his suitcases. Finally, the Nwafors were arrested on September 10, 1990. Vincent Nwafor signed a consent form for a search of his apartment and storage locker. In the locker, agents found a digital scale and four plastic bags containing a substance resembling heroin. Tests later revealed that the substances amounted to approximately 400 grams of heroin in purity ranging from 2.6 percent to 35 percent. Gibson Nwafor consented to a search of his apartment where agents found $21,900 in $100 bills hidden in various places. Agents also found documents evidencing a Brussels bank account, some wire transfer receipts, and an address book with telephone numbers for Agu, Dikeocha, and Mr. Emenogha.

Following their convictions, the three appellants challenge a number of evidentiary and sentencing matters. The Nwafors also challenge their convictions on the basis of a single conspiracy.

**2.** Federal Rule of Evidence 404(b) provides in pertinent part:

## II

## DISCUSSION

### A. Standards of Review

 We review evidentiary matters for abuse of discretion. *United States v. Garcia,* 986 F.2d 1135, 1139 (7th Cir.1993); *United States v. Briscoe,* 896 F.2d 1476, 1490 (7th Cir.), *cert. denied sub nom. Usman v. United States,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). "Appellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom: their prospects compare with those of camels who wish to pass through the eye of the needle." *United States v. Glecier,* 923 F.2d 496, 503 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). When reviewing a challenge to the sufficiency of the evidence, we review the evidence and reasonable inferences therefrom in a light most favorable to the government, and "[i]f any rational jury could have found the defendant guilty beyond a reasonable doubt, the conviction will be affirmed." *United States v. Curry,* 977 F.2d 1042, 1053 (7th Cir.1992), *cert. denied sub nom. Holland v. United States,* —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993). We review findings of fact in sentencing matters for clear error. *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993); *United States v. Davis,* 938 F.2d 744, 746 (7th Cir.1991); *United States v. Feekes,* 929 F.2d 334, 338 (7th Cir.1991).

### B. Vincent Nwafor

1. Other crimes evidence under Federal Rule of Evidence 404(b) [2]

██ We review evidentiary rulings for abuse of discretion. *United States v. Smith,*

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

995 F.2d 662, 671 (7th Cir.1993). Vincent Nwafor's defense theory was that he was entrapped by his girlfriend, a government informant, who induced him with the promise of sexual favors to make drug deliveries to the undercover agents. In order to counter such a defense, the government is obliged to prove beyond a reasonable doubt either the absence of government inducement or the defendant's predisposition to commit the crime. *United States v. Simpson*, 995 F.2d 109, 111 (7th Cir.1993); *United States v. Blackman*, 950 F.2d 420, 423 (7th Cir.1991).

As the Supreme Court has recently noted: [when] the defense of entrapment is at issue, as it was in this case, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents.

*Jacobson v. United States*, —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992). Criminal disposition is "the principal element in the defense of entrapment." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (quoting *United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)); *United States v. Sanchez*, 984 F.2d 769, 773 (7th Cir.1993). Evidence of other bad acts is admissible to prove predisposition when entrapment is at issue. *United States v. Goodapple*, 958 F.2d 1402, 1406 (7th Cir. 1992). Accordingly, the government sought to introduce evidence of Vincent Nwafor's 1986 conviction for his involvement in an undercover heroin buy. The evidence was admitted over Vincent Nwafor's objection.

■ This court has said that such evidence is subject to a four-prong test: it is admissible if (1) it is directed toward establishing a matter other than the defendant's propensity to commit the crime, (2) the evidence was sufficient to support a jury finding that the defendant committed the similar act,[3] (3) the other act is similar enough and close enough in time to be relevant to the matter in issue,

and (4) the probative value is not substantially outweighed by the danger of unfair prejudice. *United States v. Khorrami*, 895 F.2d 1186, 1194 (7th Cir.), *cert. denied*, 498 U.S. 986, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990); *United States v. Zapata*, 871 F.2d 616, 620–21 (7th Cir.1989) (citing *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984)). In applying this analysis, the district court is afforded a considerable amount of discretion, and we shall reverse only for abuse of that discretion. *Zapata*, 871 F.2d at 621.

■ Vincent Nwafor argues first that the evidence was introduced improperly to show his propensity to commit the crime, rather than merely his predisposition. We cannot accept this argument. The introduction of a prior drug conviction speaks directly to Vincent Nwafor's predisposition to engage in such illegal drug activity.

Second, Vincent Nwafor argues that the evidence is neither similar enough nor close enough in time to be relevant. Here he is charged with being the leader and organizer, but in the 1986 conviction he was merely a broker for the heroin. We cannot find this dissimilar, given his defense that he did not have a predisposition to engage in drug deals. Vincent Nwafor concedes that this court has held that five years is sufficiently close in time for purposes of Rule 404(b). *See United States v. Zeidman*, 540 F.2d 314, 319 (7th Cir.1976). However, he maintains that the government fell afoul of the prejudice prong when it went beyond the mere introduction of the prior conviction by putting on testimony of the purchasing agent and introducing the narcotics (14.05 grams) from the 1986 case.

The only prong of the analysis that requires our attention is the final one, a Rule 403–type balancing of probative value with the risk of undue prejudice. *See Goodapple*, 958 F.2d at 1407 (the fourth prong of the Rule 404(b) analysis covers Rule 403). As a

---

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

**3.** The Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), clarified this prong; originally the Seventh Circuit standard was "clear and convincing evidence."

reviewing court, we cannot re-assess "the relative impact of the legitimate and illegitimate inferences supported by evidence . . . [therefore we defer to the] contemporaneous assessment of the presentation, credibility, and impact of the challenged evidence. We therefore accord great deference to the district judge's decision to admit or exclude evidence under Rule 403." *United States v. York,* 933 F.2d 1343, 1352 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991). "This type of evidence is always prejudicial to the defendant, but when . . . it is balanced against its legitimate uses, and limited by the court's instructions, the prejudice is outweighed by its probative value." *United States v. Powers,* 978 F.2d 354, 361 (7th Cir.1992) (discussing 404(b) evidence), *cert. denied,* —— U.S. ——, 113 S.Ct. 1323, 122 L.Ed.2d 708 (1993). The probative value of this evidence is high, centered as it is on Vincent Nwafor's prior illegal drug activities. The government submits that it did not put on a mini-trial on the matter and that the testimony only involved some fifteen pages (exclusive of defense objections) of a very long transcript. The district court was the best judge of whether the time expenditure put undue emphasis on the prior act. The actual production of the baggie containing the heroin may not have been necessary. However, the district court took great care to give repeated warnings to the jury to consider the testimony only insofar as it bears on Vincent Nwafor's predisposition to deal in drugs. *See* Tr. at 1029, 1041, 1049. These instructions served to compensate for any potential prejudice. *See United States v. Maholias,* 985 F.2d 869, 880 (7th Cir.1993); *United States v. Koen,* 982 F.2d 1101, 1117 (7th Cir.1992). Indeed, immediately after the heroin was presented, the court hastened to instruct the jury once again about the testimony's limited usefulness. Tr. at 1041. Consequently, there was no error in the admission of 404(b) evidence to show Vincent Nwafor's predisposition for involvement in illicit drug transactions.

## 2. Admission of magazine article for impeachment

The government sought introduction of a photocopy of a page from a magazine article dealing with the drug connection between America and Nigeria and mentioning Vincent Nwafor, among others, as one who has been named by a Chicago Grand Jury for his involvement. The article was found with other drug-related items in Vincent Nwafor's locker. Initially, the district court denied admission because of its concern that the probative value of the article was "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. In light of Vincent Nwafor's denial of his intent and predisposition to distribute heroin, as well as his ownership of the heroin and scales found in the locker, the judge, *sua sponte,* reconsidered his earlier ruling and permitted the government to use the article for impeachment purposes only. *See United States v. Taylor,* 728 F.2d 864, 870 (7th Cir.1984) (permitting evidence of other weapons at the defendant's residence after defendant had denied knowledge of presence of a machine gun). It is clear that reserving judgment gave the trial court an opportunity to consider the risks and to weigh them against the probative value in light of the witness's denial. Defense counsel objected to the reference in the article to a previous arrest of Vincent Nwafor, but the court correctly overruled the objection because the arrest had resulted in a conviction that was properly before the court in the form of 404(b) evidence. Tr. at 1223–24. In addition, further safeguards were implemented when the article was neither published to the jury nor admitted into evidence. The cross-examination was limited to questions about Vincent Nwafor's familiarity with the article and about where he kept the clipping. Tr. at 1261–64. The admission of this material, even on such a limited basis, was obviously a close call. However, the district court recognized it as such and weighed its decision. Under these circumstances, we cannot say, given the deferential standard, that reversible error was committed.[4]

4. Vincent Nwafor argues in the reply brief that the article was improperly sent back with the jury. But Vincent Nwafor's attorney was unable to convince this court, either in the brief or at oral argument, that there is any basis in fact and on the record for this rather rash assertion.

**3. Single versus multiple conspiracies[5]**

■ Vincent Nwafor also challenges the sufficiency of the evidence of the existence of a single conspiracy (as opposed to discrete drug deals). Specifically, he argues that the variance between the proof and the indictment requires reversal. Vincent Nwafor also maintains that the charging of a single conspiracy permitted the government to make its case by introducing the uncorroborated testimony of co-conspirator Larry Palmer, pursuant to Federal Rule of Evidence 801(d)(2)(E), which would otherwise have been inadmissible. The government counters, however, that Palmer's extensive testimony *on the stand* is admissible under Federal Rule of Evidence 801(d)(2)(A) as admissions of a party-opponent. In *United States v. Thompson,* 944 F.2d 1331, 1341 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992), we said:

> Co-conspirator testimony about the words and deeds of a defendant are not hearsay; the words and deeds of the defendant, while themselves out-of-court statements, are admissions, and because the testimony is offered in court, the statements of the co-conspirator are not hearsay either.

The in-court testimony of Palmer was therefore properly admitted under Federal Rule of Evidence 801(d)(2)(A).

Viewing the proof at trial in a light most favorable to the prosecution, "we must uphold the jury's single conspiracy determination if *any* rational trier of fact could have found, beyond a reasonable doubt, the one conspiracy." *United States v. Paiz,* 905 F.2d 1014, 1019 (7th Cir.1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). The *Paiz* court also notes that this deference to a jury decision is important in the conspiracy context given the frequent need to infer the existence of a conspiracy from circumstantial evidence and reasonable inferences therefrom. *Id.*

In *United States v. Townsend,* 924 F.2d 1385, 1389–90 (7th Cir.1991), which dealt with the question of variance in a conspiracy context, we said that

> [t]he crime of conspiracy focuses on agreements, not groups. True, it takes at least two to conspire, but the government doesn't have to prove with whom a defendant conspired; it need only prove that the defendant joined the agreement alleged, not the group.... So to overturn a conspiracy conviction on the ground of variance, an appellant must show both that he did not conspire with each defendant and that he was prejudiced by being tried with defendants who were not his coconspirators.

The essential distinguishing feature between a single conspiracy and multiple conspiracies is that multiple conspiracies manifest "no agreement toward a common goal, and each conspirator's agreement constitutes an end unto itself." *Curry,* 977 F.2d at 1052 (citing *Paiz,* 905 F.2d at 1020).

There was abundant evidence at trial from which the jury could conclude that there was a single conspiracy headed by Vincent Nwafor that was devoted to the importation of heroin from Africa and its subsequent distribution in the Chicago area. The division of duties was fairly clear-cut. "Indeed, the whole point of a conspiracy, and the reason why it is punished separately as a crime, is to enable several persons to cooperate and split duties in order to facilitate the object of the conspiracy." *Curry,* 977 F.2d at 1053. The testimony of Palmer, in conjunction with recorded telephone conversations with Gibson Nwafor, revealed the relationship among Palmer, the Nwafors, Mr. Emenogha, and Uwazoke. Vincent Nwafor entrusted the drug money to his brother, Gibson Nwafor. Tr. at 111. Palmer also testified to a group meeting, involving Palmer, Vincent Nwafor, Dikeocha, and Uwazoke, to plan a Kenya purchase by Ousley and Beverly. Tr. at 161–62. In addition, Vincent Nwafor attempted to recruit a DEA agent to act as a courier, suggesting the use of a specially-designed suitcase that was in fact later used by another courier. Based on the evidence of record, we cannot say that a rational factfinder could not conclude that there was a single conspiracy to import and distribute heroin.

**4. Prosecutorial misconduct**

■ Vincent Nwafor submits that the prosecutor made comments during rebuttal

---

5. Gibson Nwafor adopts Vincent Nwafor's argument on this issue.

that disparaged defense counsel and were so inflammatory that he was denied a fair trial. The remarks at issue are as follows:

> Now, Ms. Carothers went on at length about the evidence the government presented where there were no tapes of this, no videotapes of that, no da da da da, da da da. Well, can you imagine if we left the investigation of this case to a criminal defense attorney what kind of evidence we would have?

Tr. at 1477. The record reveals that defense counsel did not object to this comment at trial. In assessing a claim of prosecutorial misconduct, we must look first at the remarks in isolation and then in the context of the entire trial. *United States v. Badger*, 983 F.2d 1443, 1450 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993), *and petition for cert. filed*, 61 U.S.L.W. 3836 (U.S. May 27, 1993) (No. 92–1910). Before an appellate court will reverse a conviction on the basis of prosecutorial misconduct, the appellant must show that the improper comments so infected the trial that he was denied due process. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Williams v. Chrans*, 945 F.2d 926, 949 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992); *United States v. McKenzie*, 922 F.2d 1323, 1326 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991). While we do not applaud such sarcastic and unprofessional behavior on the part of the prosecution, this one incident was not so egregious that it could in any sense fatally infect the trial.[6]

5. Sentencing issues

a. Four-point enhancement for being a leader or organizer under U.S.S.G. § 3B1.1(a)

▮ Vincent Nwafor insists that there is no evidence that he supervised five or more people. At the outset, it is important to note the precise requirement of the Guideline section. Guideline § 3B1.1(a) provides:

> If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

Application Note 3 to this Guidelines section offers guidance in distinguishing between a leadership and a management role:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

At sentencing, the court stated that "there is no doubt in my mind, from listening to all of the evidence in the case, that the defendant Vincent Nwafor was the moving force behind the narcotics distribution network with which he engaged, and was the primary individual around whom the others' activities revolved." Vincent Nwafor Sent. Tr. at 17. The court went on to say that Vincent Nwafor was a key player in a group that included Dikeocha, Mr. Emenogha, Gibson Nwafor, Tracy Ousley, and Beverly, among others. *Id.* at 17–18. The couriers under his direction included Beverly, Ousley, and Mr. Emenogha. We agree with the government that the list goes on to include Agu, Palmer, and Uwazoke. The record also reveals that he attempted to recruit the undercover agent, Officer Joanes. Because the record abundantly supports its findings, we detect no error in the court's enhancement of Vincent Nwafor's sentence for occupying a leadership position in the conspiracy.

---

6. Vincent Nwafor's citation to *United States v. McLain*, 823 F.2d 1457 (11th Cir.1987), does not aid his argument. In that case even *repeated* comments by the prosecutor that the defense counsel was lying and misleading the jury did not *alone* fatally infect the trial. Rather, the judge's mismanagement, coupled with these comments, resulted in a trial that denied the defendant due process. *Id.* at 1462. The prosecutor's remark in the case before us pales in comparison with the *McLain* situation. This case is more analogous to the facts found in *United States v. Turk*, 870 F.2d 1304 (7th Cir. 1989), where the court found that two instances of sarcasm could not have unduly influenced the jury.

**b. Two-point enhancement of obstruction of justice under U.S.S.G. § 3C1.1** [7]

■ The district court's finding of obstruction is a finding of fact, and we shall accept that finding unless it is clearly erroneous. *United States v. Price,* 988 F.2d 712, 721 (7th Cir.1993); *see also United States v. Casanova,* 970 F.2d 371, 377 (7th Cir.1992) (collecting cases). The Supreme Court has recently addressed this Guideline section in *United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), where it said that "[t]he district court's determination that enhancement is required is sufficient, however, if . . . the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." *Id.* —— U.S. at ——, at 1117. Further, "[a] witness testifying under oath or affirmation violates [the perjury] statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory. *See* 18 U.S.C. § 1621(1)." *Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1116.

■ At the sentencing hearing, the judge found Vincent Nwafor to have been "untruthful" and "utterly incredible" when he took the stand to testify that he had been entrapped by his love for Darlene Sumpter, especially in light of Mr. Nwafor's prior conviction for drug dealing. Vincent Nwafor Sent. Tr. at 17.[8] This is a sufficient finding of a willful lack of truthfulness regarding a material matter (an affirmative defense) to support such an enhancement for obstruction of justice under the Guidelines.

**c. Failure to make two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)** [9]

■ The district court found that Vincent Nwafor could not be afforded a two-point reduction for accepting responsibility, both because there had been no clear demonstration of acceptance and because he had twice testified untruthfully under oath. Vincent Nwafor Sent. Tr. at 18. Vincent Nwafor also contends that his use of an affirmative defense implies that he has admitted to the criminal activity and that such an admission constitutes an acceptance of responsibility. There is no basis for the contention that the simple assertion of an affirmative defense automatically entitles a defendant to a two-point reduction. As we have recently noted, "[w]here a defendant persists in asserting entrapment, she cannot also claim acceptance of responsibility." *Simpson,* 995 F.2d at 112 (7th Cir.1993) (citing *United States v. Hansen,* 964 F.2d 1017, 1021 (10th Cir.1992)).

In addition, Vincent Nwafor's sentence was enhanced as a result of the court's finding that he had committed perjury; in light of his obstruction of justice, he has demonstrated no "extraordinary circumstances" that would justify a downward departure for acceptance of responsibility. U.S.S.G. § 3E1.1, Application Note 4; *see also Feekes,* 929 F.2d at 338 (the court has discretion to reject a downward adjustment under § 3C1.1 when the defendant has committed perjury). We find no error in the court's decision not to award a reduction for acceptance of responsibility.

---

7. U.S.S.G. § 3C1.1 provides:
If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

8. The district court also said, in addressing the acceptance of responsibility reduction request, that Vincent Nwafor twice testified under oath and had done so "in a manner which was untruthful and incredible." Vincent Nwafor Sent. Tr. at 18.

9. U.S.S.G. § 3E1.1(a) provides in pertinent part:

If the defendant clearly demonstrates a recognition and affirmative acceptance of responsibility for his criminal conduct, reduce the offense level by 2 levels.
Application Note 4 provides:
Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

d. Determination that the conspiracy involved at least three kilograms of heroin under U.S.S.G. § 2D1.1

In determining that the conspiracy involved an amount of heroin in excess of three kilograms, the court stated that the "evidence presented at trial through the testimony of Palmer ... indicated that between January and September of 1989 the defendant *personally* was involved in heroin transactions and heroin importation of amounts which totalled greater than 3.1 kilograms." Vincent Nwafor Sent. Tr. at 15 (emphasis supplied). The court referred to 100 grams imported by Dikeocha in January 1989, 1.7 kilograms smuggled in by Ousley and her friend, and the 1.3 kilograms that Vincent Nwafor sought to buy in Nigeria in August 1989. *Id.* at 15–16. The court specifically stated that it found Palmer's testimony, which addressed these matters among others, to be credible.[10]

■ U.S.S.G. § 1B1.3(a)(2) provides that the offense level will be adjusted for "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Vincent Nwafor argues that he was only charged in the indictment with 1.66 kilograms and that evidence of additional quantities is unreliable. He relies on his contentions, which the district court rejected, that there is no conspiratorial link to render him responsible for any quantities beyond the amount mentioned in the indictment and that Palmer's testimony is unreliable. Because the district court made clear factual and credibility findings, which are supported by the record, we see no reason to disturb them.[11]

## C. *Gibson Nwafor*

1. Bank records under Federal Rule of Evidence 803(6) [12]

Gibson Nwafor was convicted for illegally structuring financial transactions in order to avoid the IRS reporting requirements. Specifically, he was indicted for engaging in a series of currency exchange transactions on each of ten different dates, which totalled in excess of the $10,000 limit. The government maintained that he accomplished this by conducting several smaller transactions at different branches of the First Commercial Bank. In making out its case the government submitted Currency Transaction Reports, (CTR), which reflected numerous currency exchanges made in Gibson Nwafor's name between July 5 and September 10, 1990. *See* Gov't Ex. Currency Exchange Chart, Supp. 1.

■ On appeal, Gibson Nwafor argues that the CTRs were inadmissible under Federal Rule of Evidence 803(6). Rule 803(6) provides that regularly kept business records may be admitted to prove the truth of the matters asserted therein because they are presumed to be exceptionally reliable. We review the admission of business records under an abuse of discretion standard. *Datamatic Services, Inc. v. United States*, 909 F.2d 1029, 1032 (7th Cir.1990); *Zapata*, 871 F.2d at 625. We first note that McCormick counsels that "[i]f any person in the process [of producing a business record] is not acting in the regular course of the business, then an essential link in the trustworthiness chain fails, just as it does when the person feeding the information does not have firsthand knowledge." 2 *McCormick on Evidence*, § 290, at 274 (4th ed. 1992). *See United*

---

10. The government also notes that there was evidence of considerably more than 3.1 kilograms of heroin: undercover buys accounted for several hundred grams and Dikeocha smuggled 500 grams into the country in January 1989.

11. Vincent Nwafor purports to adopt Gibson Nwafor's argument regarding the admissibility of various tapes, transcripts, and translations into evidence, but because Gibson Nwafor presents no such argument, we cannot consider it.

12. Federal Rule of Evidence 803(6) provides that the following are not excluded by the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. . . .

*States v. Bohle,* 445 F.2d 54, 62 (7th Cir. 1971). In *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930), the seminal case in this area, the court found inadmissible a policeman's report because it relied on information provided by a bystander rather than on the personal knowledge of the policeman who made out the report.[13] In some cases the hearsay nature of the information provided to the maker may fall under another hearsay exception, such as when the information constitutes an admission of a party-opponent pursuant to Federal Rule of Evidence 801(d)(2).[14] No such exception obtains here.

On the other hand, courts have also looked to additional sources of corroboration to cure the hearsay problem. For example, in *United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir.1980), the court denied admission of a hotel guest card that contained a portion filled out by the guest rather than the hotel employee, but indicated that it would have been admissible had the employee examined a source of identification.[15] In *Zapata,* this court relied on *Lieberman* and admitted a hotel registration card to prove that the individual had indeed been a guest because it was the hotel's regular business practice to verify the information and because others had met the individual at the hotel. *Zapata,* 871 F.2d at 625–26.[16]

■ In the instant case, the government called to the stand Gregory D. Salm, First Vice President and Cashier of First Commercial Bank, who identified Gibson Nwafor in court and testified that he knew him as a bank customer, but admitted that he had never personally witnessed any of Gibson Nwafor's bank transactions. Tr. at 1005. Mr. Salm also testified that it was the bank's practice to ask for a driver's license or to include an account number when completing such transactions and that the tellers were trained to indicate on the form the type of identification. Tr. at 960–62. Gibson Nwafor objects to the admission of these records insofar as they were introduced to prove that he (and not an imposter) was indeed the person who performed each transaction.[17]

In the instant case, several bank employees testified at trial. In addition to Mr. Salm, the government called to the stand several bank tellers who had handled some of the transactions in question. Cynthia Noralez from First Commercial Bank testified that she had handled a currency exchange for Gibson Nwafor on August 24, 1990, that totalled $9,800; an exchange on August 27, 1990, totalling $10,000; and an exchange on September 10, 1990, totalling $10,000. Tr. at 1135–38. Ila Patel from First Commercial Bank identified Gibson Nwafor as the person who exchanged $2,000 for larger bills on August 11, 1990, and $1,800 for larger bills on August 27, 1990. Tr. at 1144–45.

We have examined the balance of the currency transfer forms and note that the person conducting the transaction has been identified either by account number or driver's license number on all but two of the

---

**13.** *But see* 5 Wigmore, *Evidence,* § 1561a, at 490, § 1561b, at 507 (Chadbourn rev. 1974) (criticizing this limitation on the business records hearsay exception).

**14.** *See, e.g., United States v. Smith,* 609 F.2d 1294, 1301 n. 7 (9th Cir.1979) (as the hotel record included the declarant's signature, the hearsay problem might· have been cured by invoking Fed.R.Evid. 801(d)(2)(A) and (B)).

**15.** In *United States v. Pearson,* 508 F.2d 595, 597 (5th Cir.), *cert. denied,* 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975), hotel guest registration cards were admitted because the information supplied by the guests was verified by the desk clerk. Most recently, the court in *United States v. McIntyre,* 997 F.2d 687 (10th Cir.1993), admitted Western Union's records to prove who had received money because verification of identity was required, while determining that the records were not admissible to identify the sender be-

cause there was no similar policy of identification.

**16.** *Cf. United States v. Patrick,* 959 F.2d 991, 1000–1001 (D.C.Cir.1992) (citing to *Zapata* and *Lieberman* with approval and finding that admission was error because no evidence was elicited that it was standard practice to verify the customer's identity).

**17.** Courts have regularly upheld admissions under this hearsay exception when the records have been introduced in order to prove merely that the transactions had been carried out or that someone representing the defendant had effectuated the transaction. *See, e.g., United States v. Franks,* 939 F.2d 600, 602 (8th Cir.1991) (Federal Express airbill showing signature of recipient, Franks, admissible not to prove that Franks received it but to prove that someone using that name received it).

forms.[18] Under the circumstances here, the combination of the business practice of taking some form of identification, and the added safeguard of eyewitness testimony accounting for several of the exchanges, provided the district court with an adequate basis to conclude that the CTRs were reliable and, therefore, admissible as hearsay exceptions under Federal Rule of Evidence 803(6).

2. Obstruction of justice enhancement under U.S.S.G. § 3C1.1 [19]

▆ Gibson Nwafor maintains that his base offense level at sentencing was improperly increased by two levels for obstruction of justice. The presentence report recommended the enhancement because Gibson Nwafor had perjured himself at a pre-trial hearing on a suppression motion when he testified that, prior to executing a consent to search form, he and his family had been threatened by law enforcement officers. The court denied the motion, and Gibson Nwafor submits that in so doing the court did not find him to have perjured himself; rather, he argues, the court found merely that he had not shifted the burden in the suppression hearing back to the government. We cannot accept this gloss on the district court's denial of the motion.

In *United States v. Lozoya–Morales,* 931 F.2d 1216, 1218–20 (7th Cir.1991), we applied *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (warning against enhancing the sentences of all defendants whose testimony is deemed false), and determined that the district court must make an independent factual determination regarding the perjury for enhancement purposes. The sentencing court's determination that a defendant testified falsely is a finding of fact that will be affirmed absent clear error.

*United States v. Easley,* 977 F.2d 283, 286 (7th Cir.1992). In this case, the district court, in imposing the enhancement, acknowledged that the fact that Gibson Nwafor testified, alone, could not constitute obstruction of justice, but that "testifying untruthfully as to material matters, for the court's determination, as Mr. Gibson Nwafor did, does constitute an obstruction of justice...." Gibson Nwafor Sent. Tr. at 16. In support of this conclusion, the court said that Gibson Nwafor's testimony "was contradicted by several agents [at the pretrial proceeding] and, ... his testimony was not credible when evaluated in conjunction with the testimony provided by those agents." Gibson Nwafor Sent. Tr. at 15–16. This statement cannot be read as anything but a clear determination by the judge who had presided at both the hearing and the trial that Gibson Nwafor had perjured himself at the suppression hearing. Consequently, the enhancement for obstruction of justice was not error.[20]

D. *Charles Emenogha*

▆ Mr. Emenogha's sole argument on appeal is that his offense level should have been reduced by two points because he was only a "minor participant" in the conspiracy. *See* U.S.S.G. § 3B1.2(b). The government argues that Mr. Emenogha has waived this argument by failing to object at sentencing. *United States v. Bafia,* 949 F.2d 1465, 1476 (7th Cir.1991), *cert. denied sub nom. Kerridan v. United States,* — U.S. —, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992). At the hearing, Mr. Emenogha's counsel made opening remarks during which she simply stated that Mr. Emenogha's conduct was "relatively minimal," but counsel failed to request a reduction on the strength of § 3B1.2(b) or to elaborate on Mr. Emenogha's role. Emenogha Sent. Tr. at 14. In

18. The two transactions, on August 2, 1990, and September 10, 1990 (both dates that were included in the charges), account for only $4,000 in exchanges.

19. U.S.S.G. § 3C1.1 provides as follows:
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. Application Note 3 includes "committing, suborning, or attempting to suborn perjury" among

the examples of conduct that would merit an enhancement. *See supra* text accompanying note 7.

20. We must reject Gibson Nwafor's assertion that the enhancement would have a chilling effect on his First Amendment rights. The Supreme Court has recently rejected such an argument, holding that there can be no constitutional right to commit perjury. *United States v. Dunnigan,* — U.S. —, —, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993).

any case, this court has found that such a reduction might be appropriate when the individual has transported a small quantity of drugs on only one occasion. *United States v. Osborne*, 931 F.2d 1139, 1157 (7th Cir.1991). Here, however, the court indicated that Mr. Emenogha would be sentenced on the basis of "the 997 grams [of heroin base] plus the relevant conduct of the 1.3 kilograms of heroin." Emenogha Sent. Tr. at 19. The judge also found it significant that heroin base could yield 10% more saleable heroin. *Id.* at 22. In addition, couriers are critical cogs in drug conspiracies, and their importance should not be minimized.[21] Consequently, we cannot find any error in the district court's unwillingness to reduce the sentence on this basis.

### Conclusion

For the foregoing reasons, we affirm the district court's judgment in all respects.

AFFIRMED.

---

21. *See, e.g., Osborne*, 931 F.2d at 1158 (quoting with approval *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990)); *Briscoe*, 896 F.2d at 1507.