In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2744

United States of America,

Plaintiff-Appellee,

v.

Seng Xiong,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-CR-42--Lynn Adelman, Judge.

Argued June 4, 2001--Decided August 24, 2001


   Before Ripple, Evans, and Williams, Circuit
Judges.

   Williams, Circuit Judge.  Seng Xiong was
convicted of one count of conspiracy to
commit wire fraud and one count of
interstate transportation in furtherance
of a gambling scheme. He appeals the
district court's denial of a new trial on
account of what he believes were improper
statements made by the prosecutor. We
agree with the district court that the
statements were not improper and did not
prejudice him at trial and, therefore,
affirm its judgment.

I.  BACKGROUND

   Xiong was charged with (i) conspiracy to
commit wire fraud in violation of 18
U.S.C. sec.sec. 371 and 1343/1 and (ii)
interstate transportation in furtherance
of a gambling scheme in violation of 18
U.S.C. sec.sec. 2 and 1952. On the first
count, the indictment alleged that Xiong
and four other co-conspirators induced
and sought to induce victims to
participate in a rigged Blackjack card
game scheme by promising them that they
"could not lose." On the second count,
the indictment alleged that the
defendants traveled to Wisconsin in
furtherance of the gambling scheme. All
of Xiong's co-defendants pled guilty to
both charges. Xiong went to trial.

Xiong's counsel remarked in his opening statement: ". . . you won't hear me talk about the great Government conspiracy, because I am not that kind of lawyer." At trial, he did not accuse the government outright of conspiring against Xiong but argued that the government officials working on the investigation were inept and that the other witnesses were not credible. In his closing argument, he continued this strategy, arguing, for example, that Xiong's co-conspirator Edward Clark, who was hoping to be released from prison in return for his testimony, had "scammed" the government and that the "[g]overnment [was] on [his] side."

The prosecutor, in his rebuttal argument, highlighted the inconsistency between defense counsel's opening and closing statements. Defense counsel objected to the prosecutor's statements, arguing that he did not make a government conspiracy argument. The district court allowed the prosecutor to continue.

The prosecutor then commented on the substance of the defense's argument:

What [counsel] is telling you, ladies and gentlemen, is that you should never convict somebody in this type of conspiracy. Because how can you trust a co-conspirator? They're in the game. You should never be able to trust them. How can you trust what the victim says? They're in the game . . . . No matter what witnesses we call in, you can't trust them, ladies and gentlemen. This man gets to walk free.

Defense counsel objected again for the same reason. This time the court reminded the jury members that their recollection of the evidence controlled.

After the prosecutor concluded his rebuttal, the court further discussed defense counsel's objections outside of the jury's presence. Defense counsel moved for a new trial at this point, arguing that the prosecutor had disparaged his character in front of the jury and, therefore, prejudiced Xiong. The district court denied his request, noting that the prosecutor's argument "might have been a little hyperbolic, but . . . certainly was not . . . beyond the

bounds of reasonable response." The court also indicated that it would give the jury an instruction not to treat the lawyers' closing arguments as evidence./2 In addition, the court offered defense counsel the opportunity to submit another instruction. Defense counsel declined the court's invitation to submit another instruction and asked instead for an opportunity to rebut. His request was denied.

As promised, the court instructed the jury that the lawyers' closing arguments were not to be treated as evidence. After little deliberation, the jury convicted Xiong of both charges. This appeal followed.

II. ANALYSIS

The issue presented to us on appeal is whether the district court erred in denying Xiong a new trial on account of the prosecutor's statements. We review for abuse of discretion the district court's decision not to grant a mistrial based on prosecutorial misconduct. United States v. Andreas, 216 F.3d 645, 671 (7th Cir. 2000). When reviewing a district court's ruling for abuse of discretion, we reverse only if we have a strong conviction of error. United States v. Cheska, 202 F.3d 947, 950 (7th Cir. 2000) (internal quotation omitted). As discussed below, we find no error in the district court's denial of Xiong's motion for a new trial and, therefore, affirm.

In prosecutorial misconduct challenges such as this one (where the defendant has not alleged that one or more of his specific constitutional rights have been violated), we ask first whether the prosecutor's statements were improper. United States v. Cotnam, 88 F.3d 487, 497-98 (7th Cir. 1996). If we hold the statements improper, we then determine whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Emenogha, 1 F.3d 473, 481 (7th Cir. 1993). Only if we find that the defendant was so prejudiced will we grant him a new trial. Id.

Xiong argues that the prosecutor's statements disparaged defense counsel's character by implying that he lied to the jury. We agree with Xiong that

disparaging remarks directed at defense counsel are reprehensible. Such remarks can prejudice the defendant by directing the jury's attention away from the legal issues in or by inducing the jury to give greater weight to the government's view of the case. See Pierson v. O'Leary, 959 F.2d 1385, 1387 (7th Cir. 1992); United States v. Rodrigues, 159 F.3d 439, 451 (9th Cir. 1998). Disparaging remarks that suggest that defense counsel has lied to or withheld information from the jury can further prejudice the defendant by causing the jury to believe that the defense's characterization of the evidence should not be trusted and, therefore, that a finding of not guilty would be in conflict with the true facts of the case. This kind of statement, if inflammatory in nature, might also detract from the dignity of judicial proceedings.

Reading the statements in context, however, we conclude that the prosecutor did not disparage defense counsel's character. In his closing argument, defense counsel argued that the government suffered from tunnel vision and put on perjured testimony. The prosecutor responded by stating that counsel resorted to a government conspiracy argument despite the earlier promise. This response went to the credibility of the defense not defense counsel. A comment of this sort is not improper because it does not "suggest that the attorney['s] ability to argue [an inconsistent defense] is evidence . . . against the defendant[ ]." United States v. Sblendorio, 830 F.2d 1382, 1395 (7th Cir. 1987); see United States v. Scott, 660 F.2d 1145, 1168 (7th Cir. 1981) (holding that it is proper to comment on inconsistencies in the defendant's case).

The prosecutor's subsequent remarks, including "What [counsel] is telling you is that you should never be able to convict somebody in this type of conspiracy, because you can never have enough evidence . . .", attempted to show that the defense's argument was overbroad. These remarks were likewise directed at the defendant's case not defense counsel. Moreover, it was proper for the prosecutor to comment on the lameness of the defendant's case. See United States v. Turk, 870 F.2d 1304,

1308-09 (7th Cir. 1989); Sblendorio, 830 F.2d at 1395. Thus, reading the statements in context, we conclude that the prosecutor's statements did not disparage defense counsel's character.

Even if we held that the prosecutor's statements were improper, we could not say that Xiong was prejudiced by the remarks. To determine whether the defendant was prejudiced, this court examines several factors, including: (i) whether the district court sufficiently instructed the jury to disregard such statements; (ii) whether the defense could counter the prosecutor's statement through rebuttal; and (iii) most importantly, whether the weight of the evidence was against the defendant. See Rodriguez v. Peters, 63 F.3d 546, 558 (7th Cir. 1995).

The district court properly addressed Xiong's objections. Although the district court did not respond to Xiong's first objection, in response to his second objection (which was tendered just a few sentences further into the prosecutor's argument), the court reminded the jury members that their recollection of the evidence controlled. It also, in its instructions to the jury, told the jury that arguments of counsel were not evidence. And, although it denied Xiong's counsel's request for rebuttal, it offered him the opportunity to submit an additional jury instruction to the court to redress any possible prejudicial effect, an opportunity Xiong declined.

More importantly, the government presented overwhelming evidence of Xiong's guilt at trial. To sustain Xiong's 18 U.S.C. sec.sec. 371 and 1343 conspiracy to defraud conviction, the government had to show that he (a) knowingly agreed to participate in the scheme to defraud and (b) engaged in the overt act of inducing victims to play in the rigged card game. See United States v. Gee, 226 F.3d 885, 893 (7th Cir. 2000); United States v. Keller, 784 F.2d 1296, 1299 (5th Cir. 1986). Investigating officer Agent Lynch testified that Xiong admitted to the police that he knew before he agreed to participate in the scheme that it was designed to take money from unwitting victims. The officers who arrested Xiong found incriminating physical evidence in the hotel room where

he was arrested, including card-rigging paraphernalia and a suitcase containing stacks of money made to appear as if consisting solely of $100 bills. They also found several of Xiong's fake driver's licenses and social security cards in a van he and his co-conspirators drove from California to Wisconsin, where they planned to play their next game. Finally, one of the conspiracy's victims, A Lor Hang, testified that Xiong induced her to participate in a game by promising her that the game would be rigged in her favor. Taken together, this evidence clearly supports Xiong's conspiracy conviction./3 See Keller, 784 F.2d at 1299-1300.

The government likewise presented overwhelming evidence of Xiong's guilt with respect to the interstate transportation charge. To support an interstate transportation conviction, the government must prove: (a) interstate travel; (b) intent to promote unlawful activity, (here, a gambling enterprise); and (c) performance or attempted performance of an unlawful act. United States v. Scott, 245 F.3d 890, 909 (7th Cir. 2001)./4 The evidence showed that Xiong traveled from one state to another (California to Wisconsin), he intended to promote gambling, an illegal activity in Wisconsin (Xiong discussed with Hang the possibility of another card game designed to win her money back in a telephone con versation recorded without his knowledge), and performed an unlawful act (he induced Hang to play).

In denying Xiong's request for a new trial, the district court noted that the evidence was so overwhelming that it was unlikely that the prosecutor's remarks affected the verdict. In this case we not only give substantial weight to its determination, United States v. Canino, 949 F.2d 928, 935 (7th Cir. 1991), but agree. The district court did not abuse its discretion in denying Xiong a new trial.

III.  CONCLUSION

For these reasons, we Affirm the district court's denial of a new trial on account of the prosecutor's statements.

FOOTNOTES

/1 The indictment does not cite 18 U.S.C. sec. 1343 but it is clear from its language that a sec. 1343 violation is alleged.

/2 The court's instruction mirrors Instruction 1.06 of the Pattern Criminal Federal Jury Instruction for the Seventh Circuit.

/3 18 U.S.C. sec. 371, the conspiracy statute, states that "[i]f two or more persons conspire either to commit an offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined . . . or imprisoned . . . or both." 18 U.S.C. sec. 1343 provides that "[w]hoever, having devised or intending to devise any scheme . . . to defraud . . . shall be fined under this title or imprisoned . . . or both."
/4 18 U.S.C. sec. 1952 states that "[w]hoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform [that unlawful activity] shall be fined under this title, imprisoned not more than 5 years, or both . . . . As used in this section . . . "unlawful activity" means (1) any business enterprise involving gambling."