99 F.3d 1576
 18 ITRD 1897
 ZENITH ELECTRONICS CORPORATION, Plaintiff,
and
International Brotherhood of Electrical Workers, The
International Union of Electronic, Electrical, Salaried,
Machine and Furniture Workers (AFL-CIO/CLC), The Independent
Radionic Workers of America, and The Industrial Union
Department (AFL-CIO), Plaintiffs,
and
AOC International, Ltd., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-1455.
 United States Court of Appeals,
Federal Circuit.
 Nov. 7, 1996.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Feb. 27, 1997.*
 
 Christopher M. Curran, White & Case, Washington, DC, argued, for plaintiff-appellant. With him on the brief, were William J. Clinton and David E. Bond. Of counsel, was Lisa L. Hubbard.
 Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With her on the brief, were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director. Of counsel, were Stephen J. Powell, Chief Counsel for Import Administration, Berniece A. Browne, Senior Counsel, and Rebecca Rejtman, Attorney-Advisor, U.S. Department of Commerce, Washington, DC.
 Before PLAGER, RADER, and SCHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this trade case, the International Trade Administration of the Department of Commerce (ITA), and the International Trade Commission (ITC) found that Taiwanese imports of color television receivers (CTVs) pose a threat of material injury to domestic industry. Color Television Receivers, other than Video Monitors, from Taiwan, 49 Fed.Reg. 18,337 (Dep't Comm.1984) (Final Determination). In its Final Determination, the United States Department of Commerce (Commerce) refused AOC International's (AOC) proposed adjustments to the cost of production and constructed value. Color Television Receivers, Except for Video Monitors, From Taiwan; Final Results of Antidumping Duty Administrative Review, 56 Fed.Reg. 65,218 (Dec. 16, 1991) (Final Results). The United States Court of International Trade sustained Commerce's rejection of AOC's claimed adjustments. Zenith Elecs. Corp. v. United States, No. 92-01-00007, 1994 WL 704955 (Dec. 13, 1994 CIT). It also sustained Commerce's remand determination. Zenith Elecs. Corp. v. United States, No. 92-01-00007, 1995 WL 251569 (Apr. 25, 1995 CIT). Under the standard of review which requires that substantial record evidence support Commerce's decision, this court affirms.
 
 BACKGROUND
 
 2
 Antidumping laws impose additional duties on imported products being sold, or likely to be sold, at less than their fair value to the harm of a domestic industry. 19 U.S.C. § 1673 (1994). The difference between the foreign market value and the United States price for the merchandise establishes the amount of the additional duty. Id.
 
 
 3
 In 1984, Commerce determined that several Taiwanese companies sold CTVs at less than fair value in the United States, injuring the domestic television industry. Final Determination at 18,337. Therefore, the United States Customs Service imposed antidumping duties on CTVs from Taiwan. See 19 U.S.C. §§ 1673, 1673e(a). Six periodic administrative reviews would determine the actual duties. 19 U.S.C. § 1675(a) (1994).
 
 
 4
 Commerce initiated an administrative review of CTVs for the fourth review period extending from April 1, 1987, through March 31, 1988. The administrative review included AOC as well as other exporters. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 53 Fed.Reg. 18,324 (1988). During the review, Commerce confronted allegations that AOC sold its CTVs in its home market at prices below the cost of production. Color Television Receivers, Except for Video Monitors, From Taiwan; Preliminary Results and Termination in Part of Antidumping Duty Administrative Review, 56 Fed.Reg. 36,765, 36,766 (1991). To verify costs, Commerce issued a questionnaire to AOC requesting data on AOC's: (1) accounting practices; (2) materials costs; (3) labor costs; (4) factory overhead; (5) selling, general, and administrative expenses; (6) profit; (7) packing expenses; (8) production costs; and (9) subsidies.
 
 
 5
 In its response, AOC claimed an adjustment to its fixed overhead expenses by a "sponsored" amount and to its research and development (R & D) expenses by a "reimbursement" amount. After Commerce questioned these adjustments, AOC produced a two-paragraph contract, allegedly entered into on February 18, 1987, under which AOC's sole home-market distributor, Overseas Electronics Corporation (OEC), agreed to pay AOC NT $24,000,000. AOC deducted this amount from its overhead and R & D expenses for 25" and 28" CTVs. Based on this information, Commerce could not determine that OEC had reimbursed AOC for R & D on large screen CTVs. Final Results at 65,223. Therefore, Commerce rejected AOC's claimed adjustment for reimbursement.
 
 
 6
 Commerce also rejected AOC's labor rate calculations. AOC claimed that labor rates for CTVs differed significantly from labor rates for similar products at the same production center. AOC met this rejection by providing Commerce its payroll accounting records. Commerce, however, still found no justification for the significantly different labor rates. Commerce, therefore, used AOC's average labor costs in its foreign market value calculation. Final Results at 65,224.
 
 
 7
 AOC appealed Commerce's duty determination to the Court of International Trade. AOC charged that Commerce had overstated its antidumping liability for this administrative review period. The Court of International Trade sustained Commerce's actions. This appeal followed.
 
 DISCUSSION
 
 8
 The Court of International Trade has the duty of determining whether, on the record as a whole, substantial evidence supports the findings of Commerce. 19 U.S.C. § 1516a(b) (1994). This court again examines the findings of the Department of Commerce to discern whether substantial evidence supports the determination. See Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1559 (Fed.Cir.1984) (applying the substantial evidence standard in reviewing the agency's determination).
 
 
 9
 Substantial record evidence supports Commerce's determination. AOC challenges two aspects of the Commerce Department's calculations of the cost of production. First, AOC challenges Commerce's denial of an adjustment for reimbursement of R & D expense. In support of this adjustment, AOC produced only a two-paragraph contract and evidence of reimbursement payments from OEC. When Commerce sought further clarification of this evidence, AOC could not show that it had actually performed the R & D referred to in the contract. Moreover, the information AOC did supply--alleged R & D equipment purchase orders--showed purchases over six months before the OEC contract date. Also, AOC apparently finished some R & D projects before AOC entered the contract. Finally, AOC produced no records relating the R & D expenditures to specific projects, and the totals for the alleged expenditures did not match the claimed reimbursement amount. In light of this record, substantial evidence supports Commerce's denial of an adjustment to reimbursement for R & D expenses.
 
 
 10
 Second, AOC challenges Commerce's decision to use AOC's average labor rates, instead of its project-specific labor rates for CTVs. AOC alleged that its payroll accounting records reflect product-specific labor rates. Upon verification, however, AOC could not relate the cost center codes to the factory floor arrangement. Moreover, the production cards were not linked to specific cost centers. Thus, Commerce could not establish the veracity of AOC's labor cost allocation based on those records. Finally, the subject and non-subject product labor rates differed greatly. AOC provided no evidence that significantly different processes were used to produce the subject and non-subject products. Again, in this challenge, substantial record evidence supports Commerce's findings.
 
 
 11
 Applying the Atlantic Sugar standard, this court's review of Commerce's findings shows that substantial evidence supports the agency determination. Unfortunately, the brief opinion of the Court of International Trade gives little confidence that the trial court understood and fully applied the substantial evidence standard to the Commerce decision. Because this court, however, reviews the Commerce decision directly, we reach a decision without reviewing the sufficiency of the trial court adjudication. Therefore, this court affirms without vacating and remanding the decision of the Court of International Trade.
 
 COSTS
 
 12
 Each party shall bear its own costs.
 
 
 13
 AFFIRM.
 
 
 14
 PLAGER, Circuit Judge, concurring.
 
 
 15
 I concur in the judgment reached by the court, applying the Atlantic Sugar standard of review. I also concur with much of what Judge Rader states in his concurring opinion about that standard of review. The review called for by Atlantic sugar finds support in neither the statutes nor in common sense. The Court of International Trade first hears the appeal and applies its expertise to the review of the decisions of the agencies involved, utilizing the statutory standard of review which includes determining whither substantial evidence supports the fact-finding of the agencies. For us to purport to review again the agency record of decision to determine if substantial evidence exists has at least three pernicious consequences. First, it encourages disappointed litigants with deep pockets to seek a second bite at the apple, often with no visible benefits except to the litigators since generally we are not likely to reverse on that ground. Second, such appeals waste scarce judicial resources and deflect our attention from substantive issues which might be determinative. And third, the judges of the CIT cannot help but feel their efforts at review of the record, often extensive and thorough, are unappreciated.
 
 
 16
 Congress left unstated the standard on appeal by which we should review the judgments of the CIT in these matters. The Universal Camera standard utilized by the Supreme Court in similar situations makes eminently good sense. I would apply it here, as well as in comparable situations in which we review the judgment of a reviewing court which has already applied the substantial-evidence-in-the-record test to an initial adjudication. See, e.g., Munn v. Secretary of the Dep't of Health and Human Servs., 970 F.2d 863 (Fed.Cir.1992); Bradley v. Secretary of the Dep't of Health and Human Servs., 991 F.2d 1570, 1576 (Fed.Cir.1993) (Plager, J., concurring in part and dissenting in part) (critiquing the court's inconsistent practice of reviewing anew in vaccine cases the fact-finding of special masters when already reviewed by the Court of Federal Claims).
 
 
 17
 RADER, Circuit Judge concurring.
 
 
 18
 Because this court correctly applies the standard of review set forth in Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556 (Fed.Cir.1984), I must abide by this court's precedent and concur in the judgment. However, while I concur that substantial record evidence supports Commerce's determination, I write separately to question whether Atlantic Sugar articulates the proper standard of review.
 
 
 19
 In reviewing the Commerce action, the Court of International Trade applied the standard of review under 19 U.S.C. § 1516a(b) (1994).[1] Under this standard, the Court of International Trade must reverse any determination, finding or conclusion found to be "unsupported by substantial evidence on the record." Id.
 
 
 20
 Beginning with Atlantic Sugar, this court has often applied anew the substantial evidence standard in section 1516a for review of decisions from the Court of International Trade. See Rhone Poulenc Inc. v. United States, 899 F.2d 1185 (Fed.Cir.1990); Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927 (Fed.Cir.1984). Although bound to follow the Atlantic Sugar standard, I perceive that the statute and its history suggest that this court has misapprehended the proper standard of review.
 
 Section 1516a
 
 21
 In Atlantic Sugar, this appellate court first reviewed a determination from Commerce for substantial evidence, thus duplicating the trial court's review. Other than citation to section 1516a, Atlantic Sugar gave no explanation for according no deference to decisions of the Court of International Trade. 744 F.2d at 1559. Carefully read, section 1516a neither requires nor suggests the standard of review for this court's review of decisions from the Court of International Trade.
 
 
 22
 Section 1516a(b)(1)(B)(i) sets forth the substantial evidence standard for review by the Court of International Trade:
 
 
 23
 The court shall hold unlawful any determination, finding, or conclusion found--in an action brought under paragraph (2) of subsection (a) of this section, to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.
 
 
 24
 19 U.S.C. § 1516a(b)(1)(B)(i) (emphasis added). Section 1516a(b)(1)(B)(i) defines the standard of review of "the court" for actions under section 1516a(a)(2)(A). See footnote 1, supra. Section 1516a(a)(2)(A), in turn, enumerates the sole jurisdiction of the Court of International Trade over antidumping and countervailing duty order disputes:
 
 
 25
 Within thirty days after--an antidumping or countervailing duty order ... an interested party ... may commence an action in the United States Court of International Trade.
 
 
 26
 19 U.S.C. § 1516a(a)(2)(A) (1994). In other words, "the court" referred to in section 1516a is the Court of International Trade.
 
 
 27
 Thus, the statute invoked by Atlantic Sugar as the sole explanation for this court's standard of review in fact refers only to the standard of review for the Court of International Trade. Section 1516a(b) does not refer to any other court. Section 1516a therefore does not supply a standard of review for this court on appeal.
 
 
 28
 The historical context of judicial review in trade cases also enlightens this court's examination of its standard of review. Beginning in 1890, a special forum within the Department of Commerce, the Board of General Appraisers, reviewed Customs decisions. Act of June 10, 1890, ch. 407, § 12, 26 Stat. 131, 136. In response to expanding import transactions, in 1926, Congress replaced the board with the United States Customs Court, an Article I court. Pub.L. No. 69-307, 44 Stat. 670 (1926). Congress later declared the Customs Court an Article III court. Pub.L. No. 84-703, 70 Stat. 532 (1956). In 1980, Congress renamed the Customs Court the Court of International Trade to more accurately describe its expanded role.
 
 
 29
 Before 1979, trade law drew little distinction between judicial review of trade classification cases and of the more complex antidumping and countervailing duty actions. In particular, those early provisions did not provide for adequate judicial review of antidumping actions. See S.Rep. No. 249, 96th Cong., 1st Sess. 245 (1979) U.S.Code Cong. & Admin.News 381, 630-31. The Trade Agreements Act of 1979 dramatically altered the scope of judicial review for antidumping and countervailing duty actions. The 1979 Act expanded the standing of parties to challenge antidumping actions, increased the equitable authority of the courts, and provided clearer standards of review. The Act also eliminated the frequent interlocutory appeals by requiring exhaustion of administrative remedies and limited the Court of International Trade's review to the agency record. Consistent with this record review, the Court of International Trade reviewed Commerce decisions for substantial evidence. 19 U.S.C. § 1516a(b)(1).
 
 
 30
 During this era, the United States Court of Customs and Patent Appeals took appeals from the Customs Court. 28 U.S.C. § 1541(a) (1980) (repealed Pub.L. No. 97-164, § 134, 96 Stat. 41 (1982)). Before 1979, this court's predecessor, on appeal from the Customs Court, examined directly the administrative record for substantial evidence. See City Lumber Co. v. United States, 59 C.C.P.A. 89, 457 F.2d 991, 994 (1972); Kleberg & Co. v. United States, 71 F.2d 332, 334 (CCPA 1933). In City Lumber, however, the Court of Customs and Patent Appeals did not ignore sound reasoning by the appellate term of the Customs Court. Thus, as a practical matter, this court's predecessor accorded some deference to the prior review by the Customs Court.
 
 
 31
 The same 1979 Act which limited the review of the Court of International Trade also expressly created a standard of review for the Court of Customs and Patent Appeals:
 
 
 32
 Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the Court of International Trade to judge the credibility of witnesses.
 
 
 33
 28 U.S.C. § 2601(c) (1980) (repealed Pub.L. No. 97-164, § 140, 96 Stat. 44 (1982)). This language mirrored Fed.R.Civ.P. 52 for findings made by the Court of International Trade. However, the Court of Customs and Patent Appeals did not apply section 2601 to the substantive review of an antidumping action. Moreover, it is unclear how this court's predecessor could have applied section 2601 because in antidumping cases the Court of International Trade sat as an appellate body. The Court of International Trade finds no facts in antidumping cases. Nevertheless, this standard properly acknowledged the fact-finding by the Court of International Trade in other situations where it receives evidence. See Ah Ju Steel Co. v. Armco, Inc., 69 C.C.P.A. 161, 680 F.2d 751, 754 (1982) (reviewing decision to disqualify lawyer and law firm).
 
 
 34
 In 1982, the United States Court of Appeals for the Federal Circuit replaced the Court of Customs and Patent Appeals. Federal Courts Improvements Act of 1982, Pub.L. No. 97-164, § 141, 96 Stat. 45 (1982). The Federal Circuit retained jurisdiction over appeals from the Court of International Trade. 28 U.S.C. § 2645 (1994); 28 U.S.C. § 1295(a)(5) (1994). The Federal Circuit's organic act also deleted section 2601 of title 28. The enactment history of the Federal Courts Improvements Act is silent about the reasons for this deletion. However, in view of the inapplicability of section 2601 and of the Court of International Trade's promulgation of its own version of Fed.R.Civ.P. 52 in 1980, the Act no doubt acknowledged the redundancy and inapplicability of the new standard of review. After all, as noted earlier, a standard of review from findings of fact and conclusions of law has little relevance in actions where the Court of International Trade sits as an appellate tribunal reviewing decisions from Commerce and the ITC.
 
 Federal Circuit Practice
 
 35
 This court's various opinions elaborating on the standard of review for antidumping and countervailing duty cases from the Court of International Trade demonstrate discomfort with the Atlantic Sugar approach. As noted, in its first encounter with the question, this court adopted a de novo standard. In Atlantic Sugar, however, this court offered no reasoning beyond the inapposite cite to section 1516a. 744 F.2d at 1556-57.
 
 
 36
 Since Atlantic Sugar, this court has questioned either directly or by implication the propriety of duplicating the review of the Court of International Trade. In several cases, this court articulated standards of review that suggest deference to the Court of International Trade's prior review. See, e.g., Belton Indus. Inc. v. United States, 6 F.3d 756 (Fed.Cir.1993); American Permac, Inc. v. United States, 831 F.2d 269 (Fed.Cir.1987); Matsushita, 750 F.2d 927. Nonetheless, in each case, the court perused the agency record in search of substantial evidence to support the agency findings, much in the same way this court reviews trial court rulings on motions for judgment as a matter of law under Fed.R.Civ.P. 50(b). Belton, 6 F.3d at 760-62; American Permac, 831 F.2d at 274-76; Matsushita, 750 F.2d at 933-36.
 
 
 37
 In Matsushita, for instance, this court purported to "determine whether the Court [of International Trade] correctly applied the statutory standard of 19 U.S.C. § 1516a(b)(1)(B)." 750 F.2d at 932 (citing Atlantic Sugar, 744 F.2d at 1559 n. 10). This determination, however, turned on this court's "review [of] the Commission's decision." Id. Specifically, this court looked to see "whether there was evidence which could reasonably lead to the Commission's conclusion, that is, does the administrative record contain substantial evidence to support it and was it a rational decision?" Id. at 933. The Matsushita court, while cautioning that it intended to check for correct application of the test, reapplied the substantial evidence standard already applied by the trial court. In additional views appended to the Matsushita opinion, Senior Circuit Judge Nichols further expressed grave reservations about the Atlantic Sugar standard of review. 750 F.2d at 936.
 
 
 38
 Similarly, in Smith Corona Corp. v. United States, 915 F.2d 683 (Fed.Cir.1990), this court again purported to focus on whether the Court of International Trade committed reversible error in its findings or conclusions. Id. at 688. The finding on review, however, was whether substantial evidence supported the agency determination. This court reviewed the record to conclude whether the Court of International Trade correctly determined that substantial evidence supported the agency's findings. Ultimately, this court concluded that the appellant had not shown reversible error. Id. at 688. Like the Matsushita court, the Smith Corona court trumpeted deference to the Court of International Trade. Yet, in practice, the Smith Corona court still searched for substantial evidence to support the agency's findings.
 
 
 39
 More recently, in Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 982-83 n. 1 (Fed.Cir.1994), this court revisited the incongruity of reexamining, under the same standard of review, the same record already examined by the Court of International Trade, thus affording no deference to the work of that court. After commenting on Atlantic Sugar, this court noted:
 
 
 40
 Section 1516a is silent on what standard this court should apply when reviewing a Court of International Trade decision.
 
 
 41
 Were this a case of first impression, this court might follow the example of the Supreme Court when it was called on to review a review of an administrative action: Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the [court reviewing the agency determination]. This Court will intervene only in what ought to be the rare instance when the [substantial evidence] standard appears to have been misapprehended or grossly misapplied.
 
 
 42
 Id. at 983 (citations omitted). Perhaps anticipating a case such as the one before the court in this appeal, the Suramerica court recommended:
 
 
 43
 If in a future appeal this court were offered the opportunity to reconsider the Atlantic Sugar rule en banc, this court might better consider only whether the Court of International Trade misapprehended or grossly misapplied the statutory standard.
 
 
 44
 Id.
 
 
 45
 Indeed this court's replication of the record review already performed effectively renders the Court of International Trade's review superfluous. In addition to adding unnecessary time and expense to the appeal process, the Atlantic Sugar standard undercuts the benefits this court derives from the experience and expertise of the Court of International Trade. See David L. Moss Co. v. United States, 26 C.C.P.A. 381, 103 F.2d 395, 397 (1939) (noting expertise of Customs Court in trade matters); Patchogue-Plymouth Mills Corp. v. Durning, 101 F.2d 41, 43-44 (2d Cir.1939) (same). Indeed the 1979 Act, which substantially changed the procedures for judicial review of antidumping and countervailing duty cases, sought to eliminate duplication and unnecessary expense--ills revived at the appellate level by Atlantic Sugar. Perhaps for these reasons, this court continues to question the propriety of the Atlantic Sugar standard.
 
 Standard of Review
 
 46
 In view of the statutory vacuum and the problems with applying de novo the substantial evidence standard under Atlantic Sugar, I believe this court should follow a standard of review fashioned by the Supreme Court for a strikingly similar situation. In Universal Camera Corp. v. NLRB, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951), the Supreme Court determined whether the United States Court of Appeals for the District of Columbia correctly enforced an order of the National Labor Relations Board (Board). Id.
 
 
 47
 Like trade appeals, the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947, requires courts to review the Board's findings of fact for substantial evidence "on the record considered as a whole." 5 U.S.C. § 7123(c) (1994). The United States Courts of Appeals act as the reviewing courts for decisions from the Board. 5 U.S.C. § 7123(a) (1994). Therefore, our sister circuits review Board decisions under the same standard that the Court of International Trade employs in reviewing ITC and Commerce decisions. In fashioning its standard of review for Board appeals after application of the substantial evidence standard, the Supreme Court stated:
 
 
 48
 Our power to review the correctness of application of the present standard ought seldom to be called into action. Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This court will intervene only in what ought to be the rare instance when the [substantial evidence] standard appears to have been misapprehended or grossly misapplied.
 
 
 49
 Universal Camera, 340 U.S. at 490-91, 71 S.Ct. at 466.
 
 
 50
 The Supreme Court has repeatedly applied the Universal Camera standard of review. In FTC v. Standard Oil Co., 355 U.S. 396, 397, 78 S.Ct. 369, 370, 2 L.Ed.2d 359 (1958), the court of appeals rejected a determination of the Federal Trade Commission. In reaching this conclusion, the appellate court reviewed a considerable record about discriminatory pricing. Upon review of the application of the substantial evidence standard, the Supreme Court considered further review of the evidence as "unwarranted." Id. at 400, 78 S.Ct. at 371. The Supreme Court clarified: "We do no more on the issue of insubstantiality than decide that the Court of Appeals made a 'fair assessment' of the record." Id. at 401, 78 S.Ct. at 372.
 
 
 51
 In other cases as well, the Supreme Court accorded considerable deference to the substantial evidence review of lower courts. See, e.g., NLRB v. Pittsburgh Steamship Co., 340 U.S. 498, 502-03, 71 S.Ct. 453, 455-56, 95 L.Ed. 479 (1951); NLRB v. American National Ins. Co., 343 U.S. 395, 409-10, 72 S.Ct. 824, 832-33, 96 L.Ed. 1027 (1952). These cases rely on statutes similar to the present where the reviewing court applies the substantial evidence rule. See National Labor Relations Act, § 10(e), 61 Stat. 147, 29 U.S.C. § 160(e) (1994); Federal Trade Commission Act, § 5(c) and (d), 52 Stat. 112-113, 15 U.S.C. § 45(c), (d) (1994). In Universal Camera, "the Court indicated that the review standard established in that case would apply to all instances of court review of agency decisions." Standard Oil, 355 U.S. at 401 n. 6, 78 S.Ct. at 372 n. 6 (emphasis added).[2]
 
 
 52
 As the Supreme Court accorded substantial deference to the substantial evidence review of the courts of appeals, so this court ought to accord deference to the body entrusted by statute to review trade cases for substantial evidence, namely the Court of International Trade. This circuit court ought to employ the same judicial restraint exhibited by the Supreme Court. Thus, under the example set by the Supreme Court in Universal Camera, I believe this court should review the Court of International Trade's decision for misapprehension or misapplication of the statutory substantial evidence standard.
 
 
 53
 The outcome in this case depends on this court's standard of review. Under the Atlantic Sugar standard, this court affirms. As noted, under Atlantic Sugar, this court ignores the Court of International Trade decision and looks for substantial evidence to support the agency determination. The ITC records appear to contain substantial evidence to support the agency determination.
 
 
 54
 This court would reach a similar result following Smith Corona or Suramerica. This court's approach in cases such as Smith Corona and Suramerica gives little more than passing credit to the Court of International Trade's review of these agency determinations. This court still examines the agency record for substantial evidence. Consequently, this court would affirm under Smith Corona or Suramerica.
 
 
 55
 Under the misapprehended or misapplied standard, however, this court would remand back to the Court of International Trade. In its opinion, the Court of International Trade does not provide enough reasoning to suggest that it understood and properly applied the substantial evidence standard. No doubt relying on this court to reexamine the record anew without deference to its findings, the trial court provided only some brief conclusory statements. The cursory opinion from the Court of International Trade causes concern whether the Court of International Trade considered the evidence presented by the parties or whether, as charged by AOC, it merely recited Commerce's findings.
 
 
 56
 The Court of International Trade is the body charged with primary judicial review of antidumping and countervailing duty actions. That judicial body brings special expertise to bear in carrying out its review. Indeed, title 28 and title 19 expressly assign to the Court of International Trade the duty of reviewing antidumping cases for substantial evidence. This court should avoid unnecessarily imposing a standard of review that arguably could lead that expert body to abdicate its statutory review responsibility. Consequently, I believe that this court should adopt the misapprehended or misapplied standard of review.
 
 
 57
 Indeed, this case illustrates the problems of the current duplicative review under Atlantic Sugar. The trial court, apparently sensing the futility of performing a substantial evidence review which the appellate court would duplicate, entered only cursory findings after this complex adjudication. This apparently insubstantial review led this court to comment:Unfortunately, the brief opinion of the Court of International Trade gives little confidence that the trial court understood and fully applied the substantial evidence standard to the Commerce decision. Because this court, however, reviews the Commerce decision directly, we reach a decision without reviewing the sufficiency of the trial court adjudication.
 
 
 58
 This case speaks volumes about the senselessness of this duplication of review effort.
 
 
 
 *
 Circuit Judges Newman, Plager and Rader would rehear the appeal in banc
 
 
 [1]
 Section 1516a(a)(2)(A) reads:
 Within thirty days after--
 (i) the date of publication in the Federal Register of
 (I) notice of any determination described in clause (ii), (iii), (iv), (v), or (viii) of subparagraph (B)[,]
 (II) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B), or
 (III) notice of the implementation of any determination described in clause (vii) of subparagraph (B), or
 (ii) the date of mailing of a determination described in clause (vi) of subparagraph (B),
 an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.
 
 
 [2]
 The Fifth and Sixth Circuits have not followed this rule. The Sixth Circuit does not accept the "misapprehended or misapplied" standard for two reasons: "(1) there is nothing to indicate that this was the intent of the Congress; and (2) the argument makes no provision for the established superintending power of the Supreme Court." Roberson v. Ribicoff, 299 F.2d 761, 763 (6th Cir.1962). The Fifth Circuit in Ward v. Celebrezze, 311 F.2d 115 (5th Cir.1962), when presented with the argument, merely stated that "we are not persuaded that we should depart from the judicial precedents holding otherwise." Id. at 116 (citing Flemming v. Booker, 283 F.2d 321 (5th Cir.1960); Roberson, 299 F.2d at 761)
 The first reason of the Sixth Circuit begs the question because no statute creates a standard for trade appeals to this court at all. Moreover, to the extent that Congressional "intent" is relevant at all, Congress would hardly intend to create unnecessary delays, expense, and duplication.
 With regard to the Supreme Court's role in reviewing this court's trade decisions, the Supreme Court has granted certiorari in the past to review cases where this court's predecessor gave substantial deference to the trial court's ruling. Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933).