Slip Opinion 08-104

# UNITED STATES COURT OF INTERNATIONAL TRADE

---

TRAVELERS INDEMNITY CO.,

      Plaintiff,

v.

UNITED STATES,

      Defendant.

Before:     WALLACH, Judge

Court No.:   06-00151

---

[Plaintiff's Motion for Summary Judgment is DENIED; Defendant's Cross-Motion for Summary Judgment is GRANTED.]

Dated: September 29, 2008

Akin Gump Strauss Hauer & Feld LLP (Warren E. Connelly), and (Anne K.Cusick), Co-Counsel for Plaintiff Travelers Indemnity Co.

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Edward B. Ackerman), Co-Counsel for Plaintiff Travelers Indemnity Co.

Gregory G. Katsas, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Amy Rubin); Edward N. Maurer, Deputy Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, and William J. Kovatch, Jr., Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

## OPINION

**Wallach, Judge**

### I

### INTRODUCTION

This case establishes that publication of a case in the Customs Bulletin Weekly ("the Bulletin") is not sufficient notice to the United States Bureau of Customs and Border Protection

("Customs")[1] to invoke the deemed liquidation rule of 19 U.S.C. § 1504(d) ("Section 1504(d)").

Plaintiff Travelers Indemnity Company, ("Travelers") has filed a Motion for Summary Judgment claiming Bulletin publication leads to deemed liquidation. Defendant United States has cross-moved. This court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a). Because publication of a case in the Bulletin did not constitute "notice" under Section 1504(d),[2] the deemed liquidation rule of Section 1504(d) does not apply. Accordingly, Plaintiff's Motion for Summary Judgment is denied and Defendant's Cross-Motion for Summary Judgment is Granted.

## II

## BACKGROUND

On December 29, 1986, the United States Department of Commerce ("Commerce") published the final results of the first administrative review of imports from producers of certain Taiwanese color television receivers "CTVs" that entered the United States between October 19, 1983, and March 31, 1985. See Color Television Receivers, Except for Video Monitors, From Taiwan; Final Results of Antidumping Duty Admin. Review, 51 Fed. Reg. 46895 (December 29, 1986) ("the 1983–1985 Review"); Plaintiff's Brief in Support of Its Motion for Summary

---

1 The United States Customs Service is now called the Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. No. 107-296, §1502, 116 Stat. 2136 (2002); and Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003). This opinion will refer to Customs rather than the Customs Border Patrol, because the facts occurred during a period (1981-1995) when Customs administered the deemed liquidation rule of Section 1504(d).
2 19 U.S.C. § 1504(d) ("Section 1504(d)") provides in relevant part:

> when a suspension required by statute or court order is removed, the Customs
> Service shall liquidate the entry… within 6 months after receiving notice of the
> removal from the Department of Commerce, other agency, or a court with jurisdiction
> over the entry. Any entry … not liquidated by the Customs Service within
> 6 months after receiving such notice shall be treated as having been liquidated
> at the rate of duty, value, quantity, and amount of duty asserted at the time
> of entry by the importer of record.

2

Judgment ("Plaintiff's Motion") at 2. One of the Taiwanese producers that participated in the initial review was AOC International ("AOC"). Plaintiff's Motion at 2. In the 1983–1985 Review, Commerce established a cash deposit rate of 1.38% for CTVs that AOC exported to the United States and that had entered American customs territory after December 29, 1986. Id. Between November 1987 and March 1988, a company called Funai USA imported 17 entries of AOC-manufactured CTVs into the United States and paid cash deposit of 1.38% ad valorem antidumping duties on the 17 entries. Id.

On December 16, 1991, Commerce published the final results of a subsequent administrative review of CTVs exported by various Taiwanese producers for the period April 1, 1987 through March 31, 1988. See Color Television Receivers, Except for Video Monitors, From Taiwan; Final Results of Antidumping Duty Admin. Review, 56 Fed. Reg. 65218 (December 16, 1991) ("the 1987–1988 Review"). The 1987–1988 Review results covered the 17 Funai USA entries at issue. See id.; Plaintiff's Motion at 3. Commerce imposed an antidumping duty margin of 7.43% for the 17 Funai USA entries from the 1987–1988 Review period. Plaintiff's Motion at 3. Upon notification of the results of the 1987–1988 Review, AOC appealed Commerce's final results. Id. While the appeal to this court was pending, liquidation remained suspended on the 17 Funai USA entries pursuant to a preliminary injunction under 19 U.S.C. § 1516a(c)(2). This court affirmed both Commerce's original determination and the remand determination decision. Zenith Elecs. Corp., v. United States, 18 CIT 1105 (1994), appeal after remand, 19 CIT 602 (1995). AOC appealed that affirmation to the Court of Appeals for the Federal Circuit ("Federal Circuit"). See Zenith Elecs Corp., v. United States, 99 F.3d 1576 (Fed.

Cir. 1996), ("Zenith II").[3]

The Federal Circuit affirmed and held that Commerce had correctly calculated the antidumping duty margin in the 1987–1988 Review. Id. at 1579. Zenith II was issued by the Federal Circuit on November 7, 1996, but a petition for rehearing with a suggestion for rehearing en banc was filed. Id. at 1576; Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and In Support of Cross-Motion for Summary Judgment, ("Defendant's Response and Cross-Motion") at 3. The petition was denied in an unpublished order on February 26, 1997. Defendant's Response and Cross-Motion at 3. The time for petitioning for a writ of certiorari expired on May 27, 1997, without a petition being filed. Id. At that point, Zenith II became final, and suspension of the liquidation was removed. Defendant's Response and Cross Motion at 3; See Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364 (Fed. Cir. 2002).

In Zenith II the Federal Circuit determined that substantial evidence supported the final results of Commerce's 1987–1998 Review. Zenith II, 99 F.3d at 1577; Defendant's Response and Cross Motion at 3. On October 22, 1997, after the Federal Circuit had rejected AOC's cause of action in Zenith II, Customs published the Zenith II decision in its Bulletin publication. Plaintiff's Motion, Exhibit 4.

On March 18, 2005, Customs liquidated the 17 Funai USA entries, in accordance with electronic message No. 5035206 which was issued by Commerce on February 4, 2005. Id. Customs assessed the increased antidumping duties at the 7.43% rate, plus interest, for a total bill of $615,767.17. Defendant's Response and Cross-Motion at 4. The figure equaled the difference

---

[3] Zenith Elecs. Corp., v. United States, 99 F.3d 1576 (Fed. Cir. 1996). In this opinion when the court uses "Zenith II" it is referring to the 1996 Federal Circuit opinion and not the earlier Court of International Trade decision.

between the cash deposit calculated using the entered rate of 1.38% and the higher final rate of 7.43%, plus accrued interest. Plaintiff's Motion at 5; id. Customs sent the bills to Funai USA's business address in Tetersboro, New Jersey, but upon learning that Funai USA had dissolved, Customs issued a demand upon Funai USA's surety, Travelers. Plaintiff's Motion at 5. Defendant's Response and Cross Motion at 4. Travelers timely filed a protest on September 12, 2005 and the protest was denied on November 10, 2005. Defendant's Response and Cross Motion at 4. On May 8, 2006, Travelers paid $90,000 to Customs, which was the limit of its liability as surety on Funai USA's bond. Plaintiff's Motion at 6.

Travelers claims that the October 22, 1997 publication of Zenith II in the Bulletin constituted notice to Customs of removal of suspension of the 17 Funai USA entries of CTVs. Plaintiff's Motion at 5. Additionally, Travelers asserts the 17 Funai USA entries were deemed liquidated on April 22, 1998, (six months after the publication of the Zenith II decision in the Bulletin) using an antidumping rate of 1.38%. Id. at 5-6. Customs disagrees. Both parties have moved for summary judgment and maintain that there are no genuine issues of material fact to be resolved by a trial on the merits. Plaintiff's Motion at 1–2, 6; Defendant's Reply and Cross-Motion at 4. The sole issue is whether Customs received notice of the liquidation suspension removal for purposes of Section 1504(d) more than six months before it liquidated the entries at issue. See Plaintiff's Motion at 1-2, 6; Defendant's Response and Cross-Motion at 6.

5

# III

# STANDARD FOR DECISION

Summary judgment is appropriate if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact, and that the moving party is entitled to a judgment as a matter of law." USCIT R.56 (d); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). Under 28 U.S.C. § 2640(a)(1), this court reviews de novo the denial of an administrative protest under 19 U.S.C. § 1515.

# IV

# DISCUSSION

## A

## The Deemed Liquidation Rule Requires Notice to Customs

Travelers bases its entire case upon application of the "deemed liquidation" doctrine. Section 1504(d) provides that when a suspension of liquidation required by statute or court order is removed, Customs shall liquidate the entry within six months after receiving notice of the removal from Commerce, another agency or a court with jurisdiction over the entry. Section 1504(d). Any entry not liquidated by Customs within six months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record. Id. Because Section 1504(d) provides that an entry will be deemed liquidated by operation of law if Customs does not liquidate the entry within six months of receiving notice, it is "critical to determine ... what constitutes notice of the removal [of liquidation] suspension to Customs." Int'l Trading Co. v. United States, 281 F.3d

6

1268, 1271 (Fed. Cir 2002).

For deemed liquidation to occur: "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." Fujitsu, 283 F.3d at 1376. The notice Customs must receive to remove suspension is the central issue here. The Federal Circuit has held that specific liquidation instructions from Commerce via email or mailed notice, and publishing notice of a decision in the Federal Register are adequate forms of "notice" under Section 1504(d). NEC Solutions (Am.), Inc. v. United States, 411 F.3d 1340, 1347 (Fed. Cir. 2005); Fujitsu, 283 F.3d 1364 at 1382; Int'l Trading, 281 F.3d at 1275. These methods of notice are acceptable, but they are not exclusive. Thus, publication in the Bulletin must be analyzed as a potential additional method of adequate notice.

## B

## Publication in the Bulletin Does Not Initiate the Deemed Liquidation Rule

### 1
### The Bulletin Is Not a "Familiar Manner of Providing Notice"

In Int'l Trading, the Federal Circuit held that publication in the Federal Register and direct email to Customs are both sufficient notice under Section 1504(d). Int'l Trading, 281 F.3d at 1275. Contrary to Travelers' arguments (Plaintiff's Motion at 9-10), however, Int'l Trading does not hold that any publication of a judicial decision affirming the results of an antidumping duty order provides Customs with adequate notice.

Travelers attempts to equate the publishing of Zenith II in the Bulletin to publication of final results in the Federal Register as "a familiar manner of providing notice to parties" in

7

antidumping proceedings. Int'l Trading, 281 F.3d at 1275. Travelers believes Int'l Trading refers to any general publication of an administrative review or a decision affecting a review, (Plaintiff's Motion at 10), although the case only addresses publication in the Federal Register when it says "publication in the Federal Register is a familiar manner of providing notice to parties in antidumping proceedings." Int'l Trading, 281 F.3d at 1275.

Timing also distinguishes Int'l Trading. There, the results were final when published; the results in Zenith II were not.[4] In fact, the Bulletin publication of Zenith II is not the unambiguous and familiar notice described by Int'l Trading.

## 2
## Publication in the Bulletin Does Not Impute Knowledge to Customs Employees

In Fujitsu, the Federal Circuit held that publication of a court decision does not necessarily result in notice to Customs of removal of liquidation suspension.[5] Fujitsu, 283 F.3d at 1383. Commerce published notice of a case in the Federal Register. Id. at 1369. Commerce then sent Customs an e-mail instructing it to liquidate pertinent entries at the affirmed rate. Id. Customs liquidated the entries within six months after the email was sent. Id. at 1370. Fujitsu sued claiming Customs received notice before the email was sent because the earlier decision was available commercially in a variety of print and electronic media.[6] Id. at 1379–80.

The Federal Circuit determined that the availability of the earlier case in a "variety of commercially available print and electronic media" did not constitute public and unambiguous

---

[4] Zenith II was not final when issued because Zenith II's petition for rehearing was pending and the time for seeking a writ of certiorari had not expired.

[5] Fujitsu also involves certain jurisdictional questions not at issue here. See Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1370–76 (Fed. Cir. 2002).

[6] Fujitsu claimed in an earlier case the Clerk of the Federal Circuit served counsel for the Department of Justice ("DOJ") and service upon him constituted notice. Id. at 1379. The Federal Circuit disagreed. Id.

8

notice. Id. It rejected the notion that because the decision was widely available through that media, Customs was provided with notice for purposes of Section 1504(d). Id. at 1380. The court further stated that "there is no evidence that in fact Customs received general media notice...." Id.

Travelers is not relying on service of Zenith II on Government's counsel or on its general media publication (see supra n.6). Rather, it relies on the Bulletin's status as a Customs publication. Plaintiff's Motion at 12. That fact alone, however, does not prove that the publication in the Bulletin constituted unambiguous and public notice; Travelers has offered neither positive evidence to support its conclusion, nor rebuttal evidence to contest the contrary testimony offered by Defendant. See discussion infra Part IV D 1a-d, 2.

Rather, Travelers has asserted that because the Bulletin is a Customs publication, the entire agency had notice when Zenith II appeared in the Bulletin. Plaintiff's Motion at 15; Defendant's Response and Cross Motion at 14–15. Imputing knowledge to all Customs employees because of a publication in the Bulletin too broadly defines notice. That supposition of implied notice is both factually incorrect and it directly contradicts Fujitsu's holding that publication of a court decision does not necessarily result in receipt by Customs of notice that a suspension of liquidation had been removed. Fujitsu, 283 F.3d at 1383. Indeed, Travelers' argument implicitly seeks to impute knowledge of any Customs employee to the entire Agency and by extension, to hold all Customs employees responsible for knowing the information available to each employee. Such omniscience may not be implicated by law.

9

## 3
## Publication in the <u>Bulletin</u> Does Not Constitute Unambiguous Notice to the Reasonable Customs Official

Travelers also relies on <u>NEC Solutions</u>, 411 F.3d at 1340. That case considered whether an email message Commerce sent to Customs provided unambiguous and public notice that suspension of liquidation had been removed after dumping margins case had become final.[7] <u>Id.</u> at 1341–1342. The court held that for notice from Commerce to trigger the six month period within which Customs has to liquidate entries, the notice must be unambiguous that suspension of liquidation has been lifted but does not need to include specific liquidation instructions. <u>Id.</u> at 1344. Here, Travelers has not proved the <u>Bulletin</u> is unambiguous notice that would be recognized by a "reasonable Customs official" (<u>id.</u> at 1346; <u>see infra</u> Part IV D 1a-b), nor has it proven that reading the <u>Bulletin</u> is a required task for Customs workers, a position Customs has contradicted by direct evidence.

## C

## Customs' Administrative Policies Do Not Require Reading the <u>Bulletin</u>

Travelers argues that the manner by which Customs proceeds to liquidate entries (OTO3 message board) is irrelevant to the issue of whether Customs has received adequate notice of removal of suspension of liquidation because the OTO3 message board is also used for accepted forms of notice such as <u>Federal Register</u> notices announcing final court decision (<u>Fujitsu</u>) or the final results of an administrative review (<u>Int'l Trading</u>). Plaintiff's Response to Defendant's

---

[7] <u>NEC Solutions</u>, also addresses whether service of an opinion on DOJ is service on Customs because DOJ represented Commerce. <u>NEC Solutions, (Am.), Inc. v. United States</u>, 411 F.3d 1340, 1346 (Fed. Cir. 2005). The court ruled that DOJ receipt of court opinions lifting the suspension of liquidation did not give Customs notice of such lifting. <u>Id.</u>

Memorandum in Opposition for Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment ("Plaintiff's Response") at 10–13. Travelers cannot however, ignore the reality that publication in the Federal Register is an acknowledged, unambiguous and public notice recognized by Customs, this court, and the Federal Circuit. The Bulletin is not an unambiguous and public form of notice, particularly because the Customs employees who are charged with liquidation are not: 1) responsible to read the Bulletin, 2) do not receive the Bulletin on a regular basis, and 3) receive notice only through the OTO3 message board where the Bulletin is never posted. (See infra Part IV, D, 1a-d, 2).

**D**

**While Genuine Issues of Material Fact Defeat Travelers' Motion, Customs Has Submitted Sufficient Competent Evidence to Support Its Position**

CIT Rule 56 standards require that a party seeking summary judgment must on, an issue by issue basis, submit admissible evidence properly cognizable by the court, which supports each element of that party's claim or defense. See USCIT R. 56. On a Motion for Summary Judgment, the movant has the burden of propounding evidence to support the factual allegations in its claims. See Celotex Corp v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)(quoting Fed. R. Civ. P. 56(c)) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") A party opposing summary judgment may do so inter alia, by demonstrating the incompetence of a witness, the inadmissibility of evidence, or the failure of the evidence to

11

conclusively establish a necessary fact.

In this case, the key contested element is whether <u>Bulletin</u> publication constitutes notice to Customs. Defendant has submitted to the court competent declarations demonstrating that, in fact, its employees who are concerned with liquidation neither necessarily regularly read nor rely upon, the contents of that publication.[8] Travelers has not responded to Defendant's evidence with competent countervailing evidence. <u>See</u> Plaintiff's Response at 2, 11. It failed to do so at its legal peril.

## 1
## Customs Has Demonstrated the <u>Bulletin</u> Is Not an Unambiguous Form of Notice

Defendant has submitted to the court four Customs employee declarations[9] to demonstrate the ambiguous nature of the <u>Bulletin</u>. Each declaration provides relevant factual information on personal knowledge about the way the <u>Bulletin</u> interplays with everyday work at Customs.

### a
### Declaration of Dirik Lolkus

In essence, Defendant argues that its employees actually charged with liquidation simply do not necessarily read each copy of the <u>Bulletin</u>, and that in any case, they are trained and instructed not to rely on its contents. Central to Customs' argument is the Lolkus Declaration.

---

[8] <u>See</u> Defendant's Response and Cross Motion, Attachment A: Declaration of Karen Biehl ("Biehl Declaration"); Attachment B: Declaration of Dirik J. Lolkus ("Lolkus Declaration"); Attachment C: Declaration of David Genovese ("Genovese Declaration"); Mr. Genovese is the Chief of the Antidumping/Countervailing Duty Policy and Programs Branch. Genovese Declaration at 1 ¶ 1.
[9] Customs submitted the factual Biehl Declaration, Lolkus Declaration, and Genovese Declaration as well as a legal/factual analysis. Attachment D: Declaration of Edward Maurer. ("Maurer Declaration").

12

Mr. Lolkus is a Senior Import Specialist at the Port of Los Angeles. Defendant's Response and Cross Motion, Attachment B: Declaration of Dirik Lolkus ("Lolkus Declaration") at 1 ¶ 1. Lolkus was the team leader of Team 737, the team which handled the entries at issue and he has no recollection of noticing the 1997 Zenith II decision in the Bulletin. Id. at 2 ¶ 4. More importantly, however, he sets out clearly, the general practices in which he and his team are trained:

> [I]mport specialists are instructed to stay current on information relating to their work, and providing a copy of the Bulletin is one way that import specialists are encouraged to stay current. However, reading the Bulletin is not required. It is up to each specialist, to the extent he or she believes necessary or appropriate to review the Bulletin for information that may be relevant.

Lolkus Declaration at 1-2 ¶¶ 2-5 (emphasis in original).

He goes on:

> [I]mport specialists are specifically instructed that the only source for instructions upon which they are to take action with respect entries subject to antidumping or countervailing duties … are the instructions contained in messages that are posted to what is known as the OTO3 bulletin board.

Id. ¶¶ 5, 7 (emphasis in original).

Defendant has offered probative evidence that the Bulletin is not the unambiguous notice of Int'l Trading. Import specialists are not required to read the Bulletin, and the amount of time an import specialist might spend on reading the Bulletin varies widely. Lolkus Declaration at 2–3 ¶¶ 3, 5–7. Given its failure to refute Lolkus's testimony, Travelers has not proved that the Bulletin is a "familiar manner of providing notice" as described in Int'l Trading, 231 F.3d at 1275.

13

The Lolkus Declaration is evidence that the Bulletin is not unambiguous notice to the "reasonable Customs official." NEC Solutions, 411 F.3d at 1346. Defendant has given unchallenged evidence from a "reasonable Customs official" (Lolkus) that illustrates that publication in the Bulletin was not unambiguous notice. Id.

The Lolkus Declaration is relevant to the core question here,[10] and is made upon personal knowledge, it is properly submitted under CIT Rule 56(c), and to the extent it might represent hearsay, it would qualify for a business records exception under Fed. R. Evid. 803(6). See United States v. Emenogha, 1 F.3d 473, 485 (7th Cir. 1993); USCIT R. 56(c). The Lolkus Declaration factually demonstrates that Customs' employees may properly fulfill their duties without reading the Bulletin, that the Bulletin is specifically not regarded as a proper source for liquidation information, and that it may well have no significance at all to a Customs officer doing his or her routine liquidation duties. Lolkus's Declaration is supported by other competent evidence.

b
Declaration of David Genovese

Defendant argues that: (1) Customs employees who actually liquidate are not required to read each copy of the Bulletin, (2) the Los Angeles antidumping duty branch employees did not likely know about Zenith II, and (3) that Customs workers may only receive liquidation messages from the OTO3 electronic Bulletin board. Defendant's Response and Cross Motion at 9; Defendant's Reply at 4–5; Defendant's Response and Cross Motion, Attachment D: Declaration of David Genovese ("Genovese Declaration") ¶¶ 3-7 .

---

[10] Plaintiff argues "we submit that, to experienced Customs personnel the significance of the publication of (Zenith II) in the Bulletin was absolutely clear." Plaintiff's Motion at 17.

14

Genovese addresses those issues. The Branch he heads[11] acts as a liaison between field offices (the ports) and Commerce concerning the liquidation of entries, id. at 2 ¶ 3, and as part of its duties it actually prepares the liquidation instructions for the OTO3 message board which it checks with Commerce before posting. Id. at 2 ¶ 5.

Mr. Genovese states that import specialists at the ports are "instructed that the OTO3 electronic bulletin board is the only source they are to rely upon for processing any affected entries." Id. (emphasis added). He adds that "reading the Bulletin is not required of personnel in this Branch." Id. at 2 ¶ 5.

The "Branch does not receive a copy of the[Bulletin]," and it does "not have any record of the [Zenith II] opinion having been pointed out to us for purposes of reading or reviewing or for taking action up to and including the time we received the instruction which we subsequently disseminated at Message 5035206 dated February 4, 2005." Genovese Declaration at 2 ¶ 7.

Because it provides factual evidence tending to prove that reading the copy of Zenith II in the Bulletin was neither necessary to prepare the OTO3 notice, nor that it was actually read by his Branch, the Genovese Declaration supports Defendant's contention that the Zenith II publication in the Bulletin did not constitute unambiguous notice of the sort required by the deemed liquidation rule. See discussion infra Part IV, D, 1a. That is not to say that the OTO3 posting board is the only notice to Customs, see Fujitsu, 283 F.3d at 1364, just that the Bulletin publication here was not notice under the facts provided.

---

[11] Mr. Genovese is the Chief of the Antidumping/Countervailing Duty Policy and Programs Branch, Office of Trade Policy & Programs, Office of International Trade, United States Customs and Border Protection. Genovese Declaration at 1 ¶ 1.

15

c
## Declaration of Karen Biehl

One of Traveler's central assumptions is that publication in the Bulletin is equivalent to notice to all Customs employees. "There is no question that each Bulletin is circulated widely within Customs because the Government Printing Office 'currently prints approximately 2,700 copies of each issue'". Plaintiff's Motion at 15 citing id. Ex. 9 at 6, Defendant's Response to Plaintiff's First Interrogatory and Request for Production (April 26, 2007), Answer to Interrogatory No. 15. As a factual proposition Defendant attacks this assumption through the Declaration of Karen Biehl, Defendant's Response and Cross Motion. Attachment A: Biehl Declaration ("Biehl Declaration").

Biehl notes that under current practice 2,421 copies of the Bulletin are printed and that "about 2000" copies are sent to Customs offices where, according to Defendant, it currently employs approximately 43,000 people. Biehl Declaration at 2 ¶ 6; Defendant's Response and Cross Motion at 15 n. 16 (citing Performance and Accountability Report, Fiscal Year 2006, at 2, available at http://nemo.cbp.gov/of/customs_report.pdf.) Neither party seems to be aware of the numbers for 1997, though Ms. Biehl asserts the practices are the same. Biehl Declaration at 2 ¶ 7.

Ms. Biehl's statements, while not dispositive since they deal with an unrecorded past, tend to indicate that Customs followed its current practice of distributing the Bulletin to its employees at a ratio of less than twenty to one. Plaintiff has not even attempted to refute that factual assertion. Thus, the evidence presented in the Biehl Declaration tends to disprove Plaintiff's assertion that publication in the Bulletin necessarily reached all Customs employees.

16

d
Declaration of Edward Maurer

In its Motion for Summary Judgment, Plaintiff relies on discovery responses where

Defendant states that: (1) the Bulletin's purpose "is generally, to educate and inform the public of

matters concerning Customs and related subjects"[12] (Plaintiff's Motion at 15 Ex. 9 at 2 ¶ 3) and

(2) the subtitle of the Bulletin including the language "Weekly Compilation of Decisions ...

Concerning Customs and Related Matters of the ... U.S. Court of Appeals for the Federal Circuit

..." (id.), to prove that "one or more of the members of Team 737 generally reviews the

Bulletin"[13] (id. Ex. 10 at 2 ¶ 4) and that a Customs' employee may read "one or more of the items

in the Bulletin quite carefully"[14] (id. Ex. 10 at 2 ¶ 3).[15]

Even without further contradiction, Plaintiff's reliance upon these Responses for the

propositions stated is, at best, attenuated. Defendant has not, however, chosen to rest on that

failure. Edward Maurer, a lawyer at Customs, provided a declaration stating that he reviewed

publication of the Bulletin for the years 1995 through 2000[16] and determined that publication of

Federal Circuit opinions during that time "did not seem to follow any consistent pattern."

---

[12] Defendant's Response to Plaintiff's First Interrogatory and Request for Production, (April 26, 2007), Answer to Interrogatory No. 3.

[13] Defendant's Response to Plaintiff's Second Interrogatory and Request for Production, (June 2, 2007), Answer to Interrogatory No. 4.

[14] Id., Answer to Interrogatory No. 3.

[15] In its reliance on these responses, Plaintiff fails to note both Defendant's objections and, more importantly its full response to Interrogatory No. 3 in the Second Interrogatory which notes that "...the degree of attention an employee may pay to the Bulletin may vary from week to week, and may run the gamut from paying no attention to reading one or more items in the Bulletin quite carefully." Id. It is difficult to assess the validity of the objections, or indeed the full intent or impact of the responses, since neither party provided the court with the interrogatory questions to which the documents respond.

[16] Except for certain minimal missing issues, id. at 1 ¶ 2.

17

Defendant's Response and Cross Motion, Attachment D: Declaration of Edward N. Maurer at 1 ¶ 3. His analysis of the timing of case publication supports that conclusion. Id. at 2 ¶¶ 4a-6.

Thus, because publication of Federal Circuit opinions is not consistent, the Bulletin, according to Defendant, cannot be relied upon for notice, and therefore there was no reason any Customs employee should have been expected to take notice from it. The argument is persuasive, not least, because Plaintiff provides no facts to refute it. Rather, Plaintiff continues in its (Response and Opposition) to either attempt to apply the facts demonstrated by Defendant to its version of the law, (see, e.g. Defendant's Response and Cross Motion at 15 n. 16), or to ignore them entirely. The failure to assert genuine issues of contravening material facts is, when taken with the law, fatal to Plaintiff's case.

## 2
## Plaintiff Has Not Refuted Customs' Declarations and Has Not Adequately Proven That the Bulletin Is Unambiguous Notice

Defendant relies on the factual information submitted in the Customs workers' declarations[17] to prove its summary judgment argument that the publication of Zenith II in the Bulletin did not constitute unambiguous notice and that Travelers has not met its burden of proving that there are no genuine issues of fact. The declarations offer proof that the Customs employees who liquidated the entries had: (1) no responsibility to read the Bulletin; (2) were not aware of the publishing of the Zenith II decision in the Bulletin; and (3) did not rely on the Bulletin to liquidate the entries. See Lolkus Declaration at 2–3 ¶ 3, Genovese Declaration at 2 ¶¶ 5–7. Travelers argues that the Customs workers' declarations are irrelevant. Plaintiff's Response

---

[17] See Biehl Declaration; Lolkus Declaration Genovese Declaration; Maurer Declaration.

18

at 2. Travelers however, does not provide any evidence to contradict the proof provided through the declarations because it claims the issue to address is solely "whether Customs, as an agency, received legally adequate notice that the suspension of liquidation had been removed, not whether a particular individual actually read the Zenith [II] decision in the Bulletin." Id.

When the party moving for summary judgment supplements its Motion for Summary Judgment by affidavit or other material, the non-moving party "cannot respond with mere allegations." (see First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289, 88 S. Ct. 1575 20 L. Ed. 2d 569 (1968)), nor may the non-moving party rest on mere assertions made in pleadings, legal memoranda, or oral argument. See Berckley Inv. Group Ltd. v Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); USCIT R.56(e). Customs has submitted proof that the Bulletin is not unambiguous notice. Travelers has neither refuted Customs' evidence nor does it provide any case law, statutes, affidavits, declarations, or otherwise to demonstrate that the declarations are irrelevant or inadmissible. See Plaintiff's Response at 10-11. Travelers' assertions of fact, unreinforced by evidence, are only unfounded assertions. A "non-moving party is required to provide opposing evidence under [CIT]Rule 56(e)[18] only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006). See e.g., Sweats Fashions, Inc. v. Pannill Knitting Co., Inc. 833 F.2d 1560, 1562 (Fed. Cir. 1987) ("where a movant has supported its motions with

---

[18] CIT Rule 56(e) provides in part,

> When a motion for summary judgment is made and supported as provided in of the adverse party's pleading, but the adverse party's pleading by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate shall be entered against the adverse party.

19

affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant… must proffer countering evidence") (emphasis added). The Customs declarations prove that the Bulletin is not unambiguous notice and provide evidence that reinforces Customs' summary judgment claim. Travelers' failure to offer countervailing evidence: 1) is fatal to its claim that the Bulletin constitutes unambiguous notice, and 2) renders its motion for summary judgment untenable.

## V

## CONCLUSION

Plaintiff has not proven on the basis of law or fact that publication in the Bulletin is unambiguous notice, nor has Plaintiff responded to or refuted Defendant's factual declarations. Additionally, Plaintiff has not proven that publication in the Bulletin is the same sort of unambiguous notice as publication in the Federal Register. Given that ambiguity, the deemed liquidation rule does not apply. For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED. The antidumping duty rate 7.43% that was applied to the 17 Funai USA entries of CTVs from November 1987 to March 1988 is AFFIRMED.

__/s/ Evan J. Wallach____

Evan J. Wallach, Judge

Dated: September 29, 2008

New York, New York

20